**P.H. INVESTMENT, Plaintiff and Respondent,**

v.

**Cathy OLIVER, Defendant and Petitioner.**

No. 890357.

Supreme Court of Utah.

Sept. 23, 1991.

James H. Deans, Salt Lake City, for P.H. Inv.

Bruce M. Plenk, Salt Lake City, for Cathy Oliver.

Steven F. Alder, Salt Lake City, for amicus curiae Nat. Housing Law Project.

Edward R. Munson, Salt Lake City, for amicus curiae Utah Housing Coalition.

DURHAM, Justice:

This is an unlawful detainer action by P.H. Investment (the landlord) against Cathy Oliver (the tenant) based upon nonpayment of rent. Because of the deteriorated condition of the premises, the tenant argued that she owed no rent and counterclaimed for a rebate of rent paid. At trial, an officer with the Salt Lake City Building and Housing Services testified that there were forty-two housing code violations on the rental premises. The violations included numerous electrical violations, a hazardous stairway without handrails, holes in the walls in every room, dilapidated and rotted floors and carpets, a collapsed bathroom ceiling, a collapsed bedroom ceiling, leaking faucets, shower, and toilets, broken and missing windows, no bathroom door, and inadequate protection from weather. The inspector declared the building a public nuisance and ordered it repaired or demolished.

The trial court granted judgment to the landlord against the tenant for rent, treble damages, and costs of court, together with an order of restitution of the premises. The tenant received an offset against the judgment for the value of her deposit, but her rent rebate counterclaim was dismissed with prejudice. The trial court based its refusal to interfere in the contractual arrangement between the tenant and the landlord on (1) the fact that this court had never recognized a breach of implied warranty of habitability defense or cause of action, and (2) a conclusion that the tenant waived any such defense or cause of action by agreeing to rent the premises in their deteriorated condition. The court of appeals affirmed by a divided court. *P.H.*

*Investment v. Oliver,* 778 P.2d 11 (Utah Ct.App.1991). We granted certiorari.

## I. BREACH OF THE WARRANTY OF HABITABILITY AS A DEFENSE OR COUNTERCLAIM TO AN ACTION UNDER UTAH'S UNLAWFUL DETAINER STATUTE

In the case of *Wade v. Jobe,* 818 P.2d 1006, at 1010 (Utah 1991), we recognized the existence of a cause of action for breach of the warranty of habitability and discussed some possible remedies. In this case, we consider only whether breach of the warranty is a defense to an unlawful detainer action.

■ Under contract principles, relief for a breach of the warranty of habitability is based on a failure of consideration rather than on some theory of eviction. As a result, the tenant should not have to vacate the premises to raise the claim. Especially where there is a shortage of rental housing, and given the cost and inconvenience of relocation, little would be accomplished if the tenant's only remedy for a breach of the warranty of habitability required vacation of the premises before taking action to recover for the breach. Thus, many courts allow the tenant to remain in possession, withhold rent installments accruing after the landlord's breach, and then raise the landlord's breach of the warranty of habitability as a counterclaim or defense when the landlord brings an eviction action for failure to pay rent. *See Javins v. First Nat'l Realty Corp.,* 428 F.2d 1071, 1082–83, *cert. denied,* 400 U.S. 925, 91 S.Ct. 186, 27 L.Ed.2d 185 (1970). We hold that no legal doctrine, substantive or procedural, bars a tenant from raising this critical issue in an unlawful detainer action in this jurisdiction.

Utah's unlawful detainer statute, Utah Code Ann. §§ 78–36–1 to –12.6, takes away the landlord's common law right to use self-help to remove a tenant. The statute grants the landlord a summary court proceeding to evict a tenant who has violated some express or implied provision of the lease. The statute provides five instances in which the tenant is in unlawful detainer, including the situation where the tenant defaults in the payment of rent and remains in possession. Utah Code Ann. § 78–36–3(3). The remedy for a successful landlord is restitution of the premises, treble damages, and recovery for waste or rent due. Utah Code Ann. § 78–36–10. If the unlawful detainer action is based on default in payment of rent, the judgment will also mandate forfeiture of the lease. Utah Code Ann. § 78–36–10(1).

We note initially that nothing in the Utah unlawful detainer statute prohibits the assertion of any defense or counterclaim by the defaulting tenant-defendant. Nonetheless, we recognize that one of the purposes of the law is to provide a speedy resolution of the issue of possession. Based on this latter fact, in 1926, in *Dunbar v. Hansen,* 68 Utah 398, 250 P. 982 (1926), we disallowed the assertion of a counterclaim for rent abatement in an unlawful detainer action. *Dunbar,* 68 Utah 398, 250 P. at 985. The only remedy available to a defendant-tenant, we held, was to enjoin the summary proceeding by a separate action to determine the equities, thereby suspending the summary proceeding until the equitable determination was made. *Id.* (citing *Williams v. Nelson,* 65 Utah 304, 237 P. 217 (1925)).

The *Dunbar* rule stood for twenty-five years, *see Christy v. Guild,* 101 Utah 313, 121 P.2d 401, 405 (1942); *Forrester v. Cook,* 77 Utah 137, 292 P. 206, 212–13 (1930), until we impliedly overruled it in *White v. District Court,* 120 Utah 173, 232 P.2d 785 (1951). *White,* a short per curiam opinion, indicated that from that point on, counterclaims were to be permitted in an unlawful detainer action. The holding in *White* resulted from the 1950 adoption of the Utah Rules of Civil Procedure. Rejecting the suggestion that the remedy for the defendant-tenant was to bring a separate action in equity, we cited the "spirit and purpose of the New Rules ... to simplify and expedite procedure and to consolidate litigation wherever that could be done without confusion or prejudice to the rights of litigants." *White,* 120 Utah 173, 232 P.2d at 785. *White* was reaffirmed in 1977 in

*Lincoln Financial Corp. v. Ferrier*, 567 P.2d 1102 (Utah 1977), with a majority agreeing that to promote judicial economy, a "proper counterclaim arising out of the same transaction or business as the subject matter of the complaint" could be asserted in an unlawful detainer action. *Id.* at 1104 & n. 1; *see also id.* at 1105 (Maughan, J., concurring). *But see id.* at 1107 (Ellett, C.J., concurring in the result) (a speedy determination of the right to possession is the purpose of such an action, and permitting counterclaims is not in harmony with that purpose).

From a pleading perspective, therefore, this court has recognized a defendant-tenant's right to raise proper counterclaims in unlawful detainer cases. The legislature, too, apparently has recognized this right. *See* Utah Code Ann. § 78–36–8.5(4). Under the concept of dependence of covenants, a breach of the warranty of habitability is directly relevant to the issue of possession. *See Green v. Superior Court*, 10 Cal.3d 616, 111 Cal.Rptr. 704, 716–17, 517 P.2d 1168, 1180–81 (Cal.1974). Having recognized a warranty of habitability, we conclude that a breach of that warranty must necessarily give rise to a counterclaim in an unlawful detainer action; otherwise, the tenant would be required to vacate before being able to raise the breach, a result entirely inconsistent with the policy behind our adoption of the implied warranty. While the state does have a significant interest in preserving a speedy repossession remedy, that interest is not strong enough to warrant a deprivation of a meaningful opportunity to raise a breach of the warranty of habitability. We reject, therefore, any limitation on the tenant's ability to raise a breach of the warranty of habitability as a defense or counterclaim to a landlord's unlawful detainer action for possession.

## II. WAIVER

The trial court held, as a matter of law, that the tenant had waived any defense or cause of action under a theory of warranty of habitability by agreeing to rent the premises in their deteriorated condition. Courts disagree on the propriety of waivers with regard to the warranty of habitability. A majority of courts prohibit them, reasoning that such a shift of responsibility is contrary to public policy. *See, e.g.,* 2 R. Powell, *The Law of Real Property* ¶ 233[2][d], at 16B–59 (1988); *Moity v. Guillory*, 430 So.2d 1243, 1247 (La.Ct.App. 1983); *Boston Housing Auth. v. Hemingway*, 363 Mass. 184, 293 N.E.2d 831, 843 (1973); *Fair v. Negley*, 257 Pa.Super. 50, 390 A.2d 240, 243–45 (1978); *Foisy v. Wyman*, 83 Wash.2d 22, 515 P.2d 160, 164–65 (1973); *Teller v. McCoy*, 162 W.Va. 367, 253 S.E.2d 114, 130–31 (1978). In contrast, courts allowing waiver of the warranty of habitability cite the need to protect the expectations of the parties and their freedom to contract as they see fit. *See, e.g., Mease v. Fox*, 200 N.W.2d 791, 797 (Iowa 1972); *Kline v. Burns*, 111 N.H. 87, 276 A.2d 248, 252 (1971); *Berzito v. Gambino*, 63 N.J. 460, 308 A.2d 17, 22 (1973); *Kamarath v. Bennett*, 568 S.W.2d 658, 660 n. 2 (Tex.1978) (superseded by statute, *see Garza–Vale v. Kwiecien*, 796 S.W.2d 500, 502–03 (Tex.Ct.App.1990)). The Restatement sides with the latter. Restatement (Second) of Property, Landlord and Tenant § 5.6 (1977) [hereinafter Restatement].

Because we choose, with two significant conditions, to follow the Restatement, we examine its approach.[1] Although the Restatement allows a waiver with regard to the condition of leased property, such a lease term is unenforceable if it is found to be unconscionable or significantly against public policy. *Id.* A waiver of the warranty of habitability may be found significantly against public policy if it "will materially and unreasonably obstruct achievement of a well defined statutory, regulatory, or common law policy." Restatement, comment e, at 217. Comment e lists several factors to be considered in determining whether a waiver violates public policy. Those enumerated factors address many of the problems faced by low-income tenants that might lead them to waive a warranty of habitability. We note

---

**1.** This discussion applies to disclaimers by landlords as well as to waivers by tenants.

that the Restatement's limitations on the effectiveness of a waiver that is found to be unconscionable or significantly against public policy are consistent with Utah case law. *See Walker Bank & Trust Co. v. First Sec. Corp.*, 9 Utah 2d 215, 341 P.2d 944, 947 (1959).

 Nevertheless, the Restatement grants landlords significant power by allowing either implied or express waiver with respect to the condition of the leased property, Restatement at comment d, and by not expressly prohibiting boilerplate waivers. This leads us to the two conditions we add to the ability of landlords to invoke the protection of a waiver otherwise satisfying section 5.6 of the Restatement. First, for reasons of public policy and to protect the purposes for which we adopted the warranty of habitability, we require that any waiver of the warranty of habitability must be *express*. Second, we hold that the express waiver will be effective only as to any specific defects listed as waived.

In the present case, the tenant is typical of the individuals we sought to protect by adopting the warranty of habitability. Ms. Oliver is a woman with little or no resources or income, with seven children, and pregnant with an eighth at the time of this action. *P.H. Investment v. Oliver*, 778 P.2d 11, 15 (Utah Ct.App.1989) (Garff, J., dissenting). Because of a lack of bargaining power, low-income tenants often have no meaningful choice but to accept and continue to live in substandard housing. To protect persons similarly situated, our approach will invalidate boilerplate language, eliminate any duty of inspection, and protect against uninformed waivers of any latent defects. Moreover, because we will permit only express waivers of specifically listed defects, our approach should have the advantage of preventing much of

the case-by-case litigation on the subject of implied waivers which may be generated by adherence to the Restatement approach. Our approach is, in this way, a workable compromise between those courts disallowing all waivers and those following the Restatement's broader language permitting implied waivers. Although we seek to protect parties' freedom to contract as they see fit, we must also recognize the undesirability of permitting landlords to lease uninhabitable dwellings.[2]

 On remand, the trial court will need to determine if any specific defects were expressly waived by the tenant when she moved in. The burden of proving the waiver should be on the landlord. If such a waiver *was* made, the trial court will then need to determine if the waiver was contrary to public policy or unconscionable under comment e of the Restatement. The burden of proving this issue is on the tenant. We note that a finding upholding such a waiver must be supported by evidence that (1) the waiver was express and (2) the express waiver listed the specific defects waived.[3]

The trial court's judgment is reversed. This case is remanded for a new trial to determine damages for any defects which rendered the premises uninhabitable under the standards set forth in *Wade v. Jobe* and this opinion. If the trial court makes any adjustment to the rent because the premises were uninhabitable, then the tenant could not have been in unlawful detainer for failure to pay rent and the award of treble damages should be vacated.

HALL, C.J., HOWE, Associate C.J., and STEWART and ZIMMERMAN, JJ., concur.

---

**2.** We note, in that connection, that in the present case there were forty-two housing code violations on the rental premises. If we were to agree with the trial court that the tenant could impliedly waive her right under the warranty of habitability by renting and remaining on the property with knowledge of the uninhabitable conditions, we would lend support to the landlord's violations of the housing code and to a

situation hazardous to public health and safety. *Fair v. Negley*, 257 Pa.Super. 50, 390 A.2d 240, 244 (1978).

**3.** Because the question is not before us, we do not make any ruling regarding commercial leases.