Daniel ENGLISH, as personal represen-
tative of the Estate of Robert En-
glish, Plaintiff and Petitioner,

v.

Albert KIENKE, Defendant
and Respondent.

No. 890281.

Supreme Court of Utah.

Feb. 4, 1993.

Fred R. Silvester, Charles P. Sampson, Claudia F. Berry, Salt Lake City, for Daniel English.

Aaron Alma Nelson, Allan L. Larson, Salt Lake City, for Albert Kienke.

## ON CERTIORARI TO THE UTAH COURT OF APPEALS

HOWE, Associate Chief Justice:

We granted certiorari in this case to review the court of appeals' decision reported at 774 P.2d 1154 (Utah Ct.App.1989). In its decision, the court of appeals affirmed a summary judgment that had been granted in favor of defendant Albert Kienke and against plaintiff Daniel English.

Kienke, a full-time employee of the Utah Department of Transportation, owned several rental residential properties in the Salt Lake City area. He did most of the repair work on his properties, although on two or three occasions, he hired independent contractors. Robert English, plaintiff's son, learned from his mother, a friend of Kienke's wife, that Kienke might have a house to rent. Kienke showed English a house on Windsor Street in Salt Lake City that was run down and in need of extensive repairs. Since English was recently divorced and his finances were tight, he proposed to Kienke that he would repair and renovate the house in lieu of rent. Kienke accepted. However, the parties reached no formal agreement or understanding as to just how much work English would be required to perform each month. There was no understanding as to which projects would be completed, by what date, or how English's time would be valued.

English had little experience in construction, while Kienke had significant experience in construction and carpentry. Kienke showed English the areas of the house that needed repair work. English would commence a project on a particular part of the house by informing Kienke of his general plans and ideas, and Kienke would give his agreement. English would then perform the work, apparently without direction or supervision. As materials were needed, English purchased them and Kienke reimbursed him. Kienke visited the house to inspect the work only occasionally. He testified in his deposition that he did not see English for a month or two at a time. For the duration of their relationship, English worked on several different projects throughout the house.

Kienke indicated that the kitchen and back porch were in particular need of repair. He and English also discussed in general terms other areas of the house needing repair, including the front porch. Kienke was aware that a beam in the roof of the front porch was sagging, that the porch ceiling needed repairs, and that the posts supporting the porch had rotted. English agreed to repair the porch, and he and Kienke discussed the work to be done before English commenced the repairs. In performing the work, English usually used

his own hand tools but also used a few tools belonging to Kienke, such as a power saw, a shovel, a tub to mix concrete in, and a roof jack.

After English had begun work on the porch, he asked Kienke to come to the house and inspect his progress. Kienke found that English had removed the entire bottom part of the porch. English explained to Kienke that he had found that the wood supporting the floor of the porch had rotted and that he had decided to replace the porch. Kienke told English to place two-by-four boards on the sides of the porch to support the roof but did not instruct him on precisely how to proceed. English installed the temporary supports, but two weeks later, while he was working on the porch, the roof collapsed, seriously injuring him. He later died from those injuries.

Daniel English filed this action as personal representative of the estate of Robert English, alleging three claims for relief against Kienke. The first alleged common law negligence. The second was under the Workers' Compensation Act, specifically Utah Code Ann. § 35–1–45, which authorizes a common law-type action by an employee against an employer who is required by the Act to obtain workers' compensation insurance coverage but fails to do so. Kienke did not carry any workers' compensation insurance on English. English's third claim was a demand for punitive damages, based on the assertion that Kienke had acted with knowing and reckless disregard of the law.

Kienke moved for summary judgment on the grounds that (1) a landlord cannot be held liable for injuries to a tenant which result from a hazardous condition created by the tenant, and (2) Kienke was not liable under section 35–1–45 because English was an independent contractor, not Kienke's employee. On plaintiff's first claim for relief, the trial court held that English was solely negligent as a matter of law and, on the second claim, held that English was an independent contractor, not an employee. Accordingly, the trial court entered summary judgment in favor of Kienke.

The court of appeals, relying on *Stephenson v. Warner*, 581 P.2d 567 (Utah 1978), and the Restatement (Second) of Torts § 355 (1965), held that a landlord is not liable for an injury caused by a dangerous condition created by a tenant and that because English created the dangerous condition that caused his death, he alone was negligent as a matter of law. *English*, 774 P.2d at 1157. The court also ruled that it was unnecessary to address the issue of whether English was Kienke's employee for purposes of the Workers' Compensation Act, because even assuming English was an employee under the Act, he could not recover in light of the court's conclusion that English was solely negligent. *Id.*

Plaintiff now contends that the court of appeals erred in not imposing upon defendant, by virtue of his status as a landlord and a landowner, and because of his superior knowledge of construction practices, the duty to apprise English of the gravity of the risk and to instruct him adequately how to eliminate that risk. Additionally, plaintiff asserts that the court of appeals erred in not concluding that English was an employee under the Workers' Compensation Act.

## I. DUTY OF CARE

■ The court of appeals acknowledged that *Williams v. Melby*, 699 P.2d 723 (Utah 1985), modified the common law duty of care landlords owe to tenants with respect to hazardous conditions on leased premises. In *Williams*, we reviewed the development of the law, beginning with the early common law rule that a landlord was not liable to a lessee for physical harm caused by a dangerous condition on the land when the tenant took possession. We noted that with time, the general rule was modified to make landlords liable under certain circumstances for injuries resulting from dangerous conditions on leased premises. We specifically outlined four instances in which landlords could be held liable for hazardous conditions: (1) if the landlord had contracted to repair the premises; (2) if there was a hidden or latently dangerous condition which was known to the landlord and caused an injury; (3) if the premises were

leased for purposes of admitting the public and a member of the public was injured; or (4) if part of the premises was retained under the landlord's control but was open to the use of the tenant. *Id.* at 726. None of these circumstances are present in the instant case. Not only was the dangerous condition here created by the tenant after he took possession, but Kienke warned English to adequately support the roof. In his deposition, Kienke testified that English replied to the warning, "I understand all that. I will do it all." Therefore, English had been apprised by Kienke of the dangerous condition of the roof when English removed the supports. We therefore find no error in the conclusion of the court of appeals that Kienke, as landlord, is not liable for an injury caused by a dangerous condition created by a tenant.

Plaintiff, however, asserts that Kienke owed English a duty not only as his landlord, but also as a possessor of land upon which English came to work. In this regard, plaintiff relies upon the Restatement (Second) of Torts § 343, which states:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and

(c) fails to exercise reasonable care to protect them against the danger.

For the purposes of our analysis here, we will assume that Kienke was a "possessor" of land, although under section 328E of the Restatement, a possessor is one in actual physical possession. *See id.* § 328E. Kienke did not live on the property; it was a vacant rental unit in need of repairs and renovation. Kienke visited the premises only occasionally.

English was an invitee within the meaning of section 343. Section 332, comment "e" lists "a workman who comes to make alterations or repairs on land used for residence purposes" as an example of an invitee. This type of an invitee is called a "business visitor" by the Restatement because he or she "is invited to enter or remain on land for a purpose directly or indirectly connected with business dealings with the possessor of the land." *Id.* § 332(3).[1]

Sections 343 and 343A of the Restatement impose on a possessor of land the duty to warn an invitee about two general types of hazards: (1) those that are present on the land when the invitee enters which the possessor should expect the invitee will not discover or realize, and (2) those that the possessor creates after the invitee's entry, such as in *In re Wimmer's Estate*, 111 Utah 444, 182 P.2d 119 (1947). Neither type is present here. English was an invitee (business visitor) who was engaged to make extensive repairs on the house. In so doing, he created the hazard which led to his death. There is no basis to impose on Kienke under section 343 or 343A the duty to protect English from the hazard English created when Kienke did not live on the property, had not been there for two weeks, and did not supervise or exercise control over English's work.

The dissenting opinion erroneously finds that Kienke has a duty, relying upon *Shaffer v. Mays*, 140 Ill.App.3d 779, 95 Ill.Dec. 83, 489 N.E.2d 35 (1986), and *Haberer v. Village of Sauget*, 158 Ill.App.3d 313, 110 Ill.Dec. 628, 511 N.E.2d 805 (1987). Those cases are distinguishable because in each of them, the owner retained either full or partial control over the work performed by the invitee. For that reason, the *Haberer* court relied upon the Restatement (Second) of Torts section 414, not section 343 or 343A. In *Shaffer*, the invitee was gratu-

---

**1.** The court of appeals misread *Williams v. Melby,* stating that this court was abandoning the common law duty analysis based on whether a plaintiff was an invitee, a licensee, or a trespasser. *Williams* dealt only with landlord/tenant law and did not deal with the duty of due care owed to invitees, licensees, or trespassers. We have recently stated that the duty of care owed by a possessor of land is determined by the status of the person who comes onto the property. *See Pratt v. Mitchell Hollow Irr. Co.,* 813 P.2d 1169, 1172 (Utah 1991).

tiously "assisting" the owner in remodeling a house and the dangerous condition was not created by the invitee, but by the owner.

■ A limitation on the liability imposed by sections 343 and 343A was recognized in *Donovan v. General Motors*, 762 F.2d 701 (8th Cir.1985), in which plaintiff Donovan was an employee of an independent contractor who was constructing an addition to a General Motors plant. Donovan was injured in a fall while working on the unfinished roof of the addition when a plywood panel gave way under him. The court determined that section 343 of the Restatement did not apply:

In this case Donovan fell from a roof under construction by the independent contractor. None of the evidence suggests that Donovan's fall had anything to do with the condition of GM's premises before the independent contractor came on those premises. Therefore, we find the safe workplace doctrine derived from Restatement § 343 to be inapposite here. The damage alleged here did not arise out of any failure by GM to provide a safe workplace but out of the manner in which the work was done by the independent contractor.

*Id.* at 704. While it is unnecessary here to determine whether English was an independent contractor, the duty owed to any classification of an invitee is the same under sections 343 and 343A and does not extend to a hazard created by the invitee.

■ The fact that Kienke may have had superior knowledge of construction practices and skills is immaterial. This diversity of experience does not affect a possessor's legal duty. Kienke did more than the law required when he warned English to adequately support the roof. *See Hunt v. Jefferson Arms Apartment Co.*, 679 S.W.2d 875, 882 (Mo.Ct.App.1984) (holding that a warning to a construction supervisor about an open elevator shaft satisfied any duty an owner owed to his contractor).

## II. ENGLISH WAS NOT AN EMPLOYEE

■ The trial court ruled that English was an independent contractor, not an employee under the Workers' Compensation Act, and therefore, the provisions of that Act did not apply. The court of appeals did not decide whether English was an employee or an independent contractor because it concluded that English was solely negligent in causing his own death, and plaintiff could not recover under the Act in those circumstances. However, because Utah Code Ann. § 35–1–57 provides that proof of injury shall constitute prima facie evidence of negligence on the part of an uninsured employer and that the burden shall be upon the employer to show freedom from negligence resulting in such injury, we shall address the question of whether English was an employee.

In *Harry L. Young & Sons v. Ashton*, 538 P.2d 316 (Utah 1975), this court explained the difference between an employee and an independent contractor for the purpose of determining coverage of the Act:

Speaking in generality: an employee is one who is hired and paid a salary, a wage, or at a fixed rate, to perform the employer's work as directed by the employer and who is subject to a comparatively high degree of control in performing those duties. In contrast, an independent contractor is one who is engaged to do some particular project or piece of work, usually for a set total sum, who may do the job in his [or her] own way, subject to only minimal restriction or controls and is responsible only for its satisfactory completion.

The main facts to be considered as bearing on the relationship here are: (1) whatever covenants or agreements exist concerning the right of direction and control over the employee, whether express or implied; (2) the right to hire and fire; (3) the method of payment, i.e., whether in wages or fees, as compared to payment for a complete job or project; and (4) the furnishing of the equipment.

*Id.* at 318 (footnote omitted).

■ Here, there was no agreement as to Kienke's right to direct or control English's

work. Kienke's supervision was sporadic at best. English was not given specific job assignments or particular duties with respect to the projects he undertook, nor was he told how to go about performing his work. Kienke simply stated that he wanted quality work done but did not want to go overboard with expenses. In essence, the arrangement was that English would engage in repair and restoration work at his convenience without supervision or direction.

English received no payment of wages or fees in the usual sense. Although the amount of the rent could be ascertained, there was no agreement as to the value to accord English's labor. English was not paid on a project basis, and there was no agreement as to how many hours of labor he would perform each week or month. Furthermore, English primarily used his own tools. Kienke provided only a power saw, a shovel, a roof jack, and a tub for mixing cement. English purchased most of the materials directly, although he was reimbursed for them.

The undefined nature of the compensation arrangement and the wide discretion allowed English in choosing projects and the manner in which he would proceed, including when and how long he would work, lead us to conclude that English was not an employee for purposes of the Workers' Compensation Act. *See Graham v. R. Thorne Found.*, 675 P.2d 1196 (Utah 1984).

◼ Plaintiff contends that at the very minimum, Kienke was a statutory employer as defined by section 35–1–42(2). He relies upon our decision in *Bennett v. Industrial Commission*, 726 P.2d 427 (Utah 1986), where we pointed out that our statutory employer provision is a legislatively created scheme by which conceded nonemployees are deliberately brought within the coverage of the Workers' Compensation

Act. However, in that case the issue was whether a contractor was liable for injuries to an employee of a subcontractor. Under the statutory scheme, such an individual is sometimes deemed a statutory employee of the contractor. That is simply not the case here.

The decision of the court of appeals is affirmed.

HALL, C.J., and DURHAM and ZIMMERMAN, JJ., concur.

STEWART, Justice, dissenting.

The majority holds as a matter of law that Albert Kienke, a landlord, owed no duty of care to Robert English, a tenant, who performed remodeling services for rent. I dissent.

The majority opinion represents an unfortunate departure from this Court's prior willingness, in light of contemporary legal developments, to undertake a realistic reappraisal of old common law concepts of tort liability of possessors of land. *See, e.g., Wade v. Jobe*, 818 P.2d 1006 (Utah 1991); *P.H. Investment v. Oliver*, 818 P.2d 1018 (Utah 1991); *Reid v. Mutual of Omaha Ins. Co.*, 776 P.2d 896 (Utah 1989); *Williams v. Melby*, 699 P.2d 723 (Utah 1985).

*Williams* modified the common law duty of care that landlords owe to tenants with respect to hazardous conditions on leased premises.[1] We reviewed the development of landlord-tenant law in *Williams*, beginning with the early common law rule that a landlord was not liable to a tenant for physical harm caused by a dangerous condition existing on the land when the tenant took possession. Over time, the general rule was modified to make landlords liable under certain circumstances for injuries resulting from dangerous conditions on leased premises. Prior to *Williams*, there

---

1. *Williams* explained the reason for that modification as follows:

   The expanded liability of landlords under modern law has evolved from recognition of the fact that a residential lessee does not realistically receive an estate in land. Rather, the lessee's rights, liabilities and expectations are more appropriately viewed as governed by contract and general principles of tort law. 699 P.2d at 727; *see also* W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 63, at 434–35 (5th ed.1984) (discussing social policies supporting a modification of the traditional common law duty owed tenants by landlords).

were four instances in which landlords could be held liable for hazardous conditions.[2] *Williams* expanded the scope of a landlord's duty by holding that landlords have "a duty to exercise reasonable care toward their tenants in all circumstances" and that "[l]andlord liability is no longer limited by the artificial categories developed by the common law." 699 P.2d at 726. The Court reversed a summary judgment in favor of a landlord, even though the tenant knew of the hazard created by a dangerously designed apartment window through which she fell, because a trier of fact could have reasonably inferred that *both* the landlord and the tenant were negligent.

The legal relationship between English and Kienke was more than a simple landlord-tenant relationship. Although the labor English performed constituted rent, his remodeling activities differed from the ordinary and usual activities of a tenant. English, however, was not an independent contractor in the usual or typical sense of that term: he was not licensed as an independent contractor; he was not experienced in construction; and he did not remodel for anyone but Kienke and only remodelled for the purpose of paying rent. In any event, whether or not English was technically an independent contractor, Kienke still owed English a duty of due care under the circumstances. *See Haberer v. Village of Sauget,* 158 Ill.App.3d 313, 110 Ill.Dec. 628, 511 N.E.2d 805 (1987).

The majority acknowledges the change in the law made by *Williams,* but asserts that the old common law principle that "tenants are liable for any dangerous condition on the premises which they create" governs this case. Accordingly, the majority holds that English was an invitee and that Kienke owed him no duty of care because English created the hazard that caused his death. The majority states:

English was an invitee (business visitor) who was engaged to make extensive repairs on the house. In so doing, he created the hazard which led to his death. There is no basis to impose on Kienke under section 343 or 343A [of the *Restatement (Second) of Torts* ] the duty to protect English from the hazard English created when Kienke did not live on the property, had not been there for two weeks, and did not supervise or exercise control over English's work.

I submit that the majority misapplies §§ 343 and 343A of the *Restatement (Second) of Torts* (1965). Section 343 states the general rule as to a landowner's liability:

A possessor of land is subject to liability for physical harm caused to his invitees by a condition on the land if, but only if, he

(a) knows or by the exercise of reasonable care would discover the condition, and should realize that it involves an unreasonable risk of harm to such invitees, and

(b) *should expect that they will not discover or realize the danger, or will fail to protect themselves against it, and*

(c) *fails to exercise reasonable care to protect them against the danger.*

(Emphasis added.) Kienke obviously knew of the risk of harm to English and should— and did—expect that English would *not* realize the danger. Whether Kienke failed to exercise "reasonable care to protect" English, specifically, whether the warning Kienke gave English was legally sufficient to discharge his duty of due care under the circumstances, raises a material issue of fact that a jury should decide.

Certainly a landowner's warning of the hazards an invitee may encounter may be sufficient to discharge the landowner's duty of due care. *See Restatement (Second) of Torts* § 343 cmt. d, at 217. *See*

---

**2.** *Williams* stated that a lessor could be liable for negligence if
(1) he had contracted to repair the premises; (2) there was a hidden or latently dangerous condition which was known to the lessor and caused an injury; (3) the premises were

leased for purposes of admitting the public and a member of the public was injured; or (4) part of the premises was retained under the lessor's control, but was open to the use of the lessee.
699 P.2d at 726 (citations omitted).

*generally* § 343A cmt. e., at 219. A warning may not be sufficient, however, if the landowner has reason to expect that the invitee may suffer physical harm despite his general awareness of the hazardous condition or its obviousness. In that event, a landowner must take other reasonable steps to provide for the safety of the invitee. *See* § 343A cmt. f(c), at 220. On facts similar to the instant case, the court in *Shaffer v. Mays*, 140 Ill.App.3d 779, 95 Ill.Dec. 83, 489 N.E.2d 35 (1986), applying §§ 343 and 343A of the *Restatement*, held that a homeowner owed a duty of care to an invitee who, in remodeling a home, created the hazard that caused his injuries. *See also Haberer v. Village of Sauget*, 158 Ill.App.3d 313, 110 Ill.Dec. 628, 511 N.E.2d 805 (1987).

In this state, persons hired to perform work for a landowner are business invitees. *In re Wimmer's Estate*, 111 Utah 444, 449–51, 182 P.2d 119, 121–23 (1947). We have also held that although a landowner may not have a duty of care to an invitee with respect to a dangerous condition that is known or obvious to the invitee, this rule does not preclude liability if the landowner should have anticipated harm to the invitee. *Moore v. Burton Lumber & Hardware Co.*, 631 P.2d 865, 868 (Utah 1981); *see also Restatement (Second) of Torts* § 343A(1), at 218. Indeed, we have long recognized a landowner's duty to use reasonable care to protect invitees from dangerous conditions on the premises. *Rogalski v. Phillips Petroleum Co.*, 3 Utah 2d 203, 208, 282 P.2d 304, 307 (1955); *In re Wimmer's Estate*, 111 Utah at 452, 182 P.2d at 123. That duty runs to all workers, irrespective of their status as employee, independent contractor, or otherwise. *See Robertson v. Sixpense Inns of Am., Inc.*, 163 Ariz. 539, 789 P.2d 1040, 1045 (1990) (en banc).

Under the principle stated in § 343 of the *Restatement*, a jury should determine the adequacy of Kienke's warning. I submit that the majority's mechanical and rigid application of the rule that a landowner is not liable for an injury caused by a hazard created by an invitee does not comply with the *Restatement* and is bad policy under comparative negligence law.

A jury could reasonably conclude that Kienke was negligent to some degree and that English was not solely responsible for his death. It is undisputed that Kienke told English he should support the porch roof with "plenty of $2 \times 4$'s." Whether that warning was sufficient, given the nature of the risk, the relative experience and knowledge of English and Kienke, and other circumstances, raises factual issues that cannot legitimately be resolved on summary judgment. There is no evidence in the record as to how many two-by-fours should have been placed under the roof to provide adequate support or how many were in fact put in place as temporary supports. Nor does the evidence indicate how apparent the risk would have been to a layperson such as English or how great the risk was that the roof would collapse without proper support. There is, however, evidence that Kienke had superior knowledge as to the nature and strength of the internal structure of the porch roof. Certainly, Kienke was far more knowledgeable than English as to the nature of the risk and what steps were necessary to avoid the hazard. Clearly, there are a number of factual issues that need to be explored to determine the adequacy of Kienke's warning. In any event, Kienke failed to meet his burden on his motion for summary judgment of showing that there were no material issues of fact and that he was entitled to judgment as a matter of law.

We have consistently held that summary judgment should be granted in negligence cases only in the "most clear instances." *Webster v. Sill*, 675 P.2d 1170, 1172 (Utah 1983); *see also Apache Tank Lines, Inc. v. Cheney*, 706 P.2d 614, 615 (Utah 1985); *Bowen v. Riverton City*, 656 P.2d 434, 436 (Utah 1982). Because Utah is a comparative negligence state, that rule has special force when a party asserts, as a matter of law, that the other party was solely negligent and that that party's negligence was the sole proximate cause of the injury. Where there are legitimate inferences that both parties were negligent, it is not for a court to decide as a matter of law that one party's degree of negligence was of suffi-

 

cient magnitude when compared with that of the other party to warrant summary judgment. The task of measuring the relative degree of negligence is for the trier of fact, unless the absence of negligence of one party is clear on any reasonable view of the evidence. As we stated in *Williams:*

> Even though plaintiff may have been negligent, summary judgment is an altogether inappropriate procedure for assessing her degree of negligence against the negligence of the defendants. In the days when contributory negligence was an absolute defense in a negligence action, summary judgment could be used to dispose of negligence actions without depriving a plaintiff of his right to a trial on the merits. Now, however, contributory negligence is not an absolute defense, and summary judgment is rarely an appropriate remedy for resolving negligence actions.

699 P.2d at 728.

I would reverse and remand for a trial.