**BUILDING MONITORING SYSTEMS, INC., owner of Jordanaire West Apartments, Plaintiff and Appellee,**

v.

**Mike PAXTON and Amy Lowder, Defendants and Appellants.**

No. 940464.

Supreme Court of Utah.

Oct. 27, 1995.

James H. Deans, Salt Lake City, for plaintiff.

Bruce M. Plenk, Eric Mittelstadt, Salt Lake City, for defendants.

HOWE, Justice:

In December 1991, defendants Michael Paxton and Amy Lowder rented an apartment in West Jordan, Utah, from plaintiff Building Monitoring Systems, Inc., under a month-to-month rental agreement. Shortly after moving in, they notified plaintiff's resident manager that the plumbing and wiring

in their apartment needed to be repaired. Although the manager attempted to make some minor repairs, the overall condition of the apartment remained unacceptable to defendants. On August 9, 1993, they complained to the Salt Lake City and County Health Department of an inoperable refrigerator, leaking sinks, decaying bathroom walls, and deteriorated carpeting. The Health Department determined that these conditions violated health department regulations and sent plaintiff a letter ordering it to make necessary repairs by September 7. On September 1, plaintiff served Paxton and Lowder with an eviction notice, effective September 30. However, the tenancy was reinstated when the manager accepted rent from them for the month of October.

On or about October 12, defendants made another complaint to the Health Department, and they also gave plaintiff a written list of needed repairs. One day after plaintiff received notice of the complaint, it served defendants with another eviction notice, demanding that they vacate by October 31. When they did not do so, plaintiff brought this unlawful detainer action against them to compel them to yield possession of the premises and to pay its costs and attorney fees pursuant to Utah Code Ann. § 78–36–3(1)(b)(i). They countered that the court should enjoin plaintiff from carrying out the eviction because it was issued in retaliation for their complaints to the Health Department. The court agreed that the eviction was retaliatory but declined to recognize the defense because of the lack of statutory or case law defining it in Utah. Defendants appeal.

At issue is whether retaliatory eviction by a landlord is an affirmative defense to an unlawful detainer action in Utah. Although at least thirty-one states statutorily prohibit retaliatory conduct by a landlord, 5 *Thompson on Real Property* 398 (David A. Thomas ed. 1994), the Utah legislature has not adopted such a statute. However, in many jurisdictions, courts have recognized that the promulgation of housing regulations provides support for the establishment of the retaliatory eviction defense. *See, e.g., Robinson v. Diamond Housing Corp.*, 463 F.2d 853, 862 (D.C.Cir.1972); *Schweiger v. Superior Court*, 3 Cal.3d 507, 517, 476 P.2d 97, 103, 90 Cal. Rptr. 729, 735 (1970); *Clore v. Fredman*, 59 Ill.2d 20, 26, 319 N.E.2d 18, 21 (1974); *Markese v. Cooper*, 70 Misc.2d 478, 485, 333 N.Y.S.2d 63, 69 (Monroe County Ct.1972); *Dickhut v. Norton*, 45 Wis.2d 389, 396, 173 N.W.2d 297, 301 (1970). *See generally* Annotation, *Retaliatory Eviction of Tenant for Reporting Landlord's Violation of Law*, 23 A.L.R.5th 140 (1994).

The leading case in this area is *Edwards v. Habib*, 397 F.2d 687 (D.C.Cir.1968), *cert. denied*, 393 U.S. 1016, 89 S.Ct. 618, 21 L.Ed.2d 560 (1969). In *Edwards*, the District of Columbia Circuit Court fashioned the defense of retaliatory eviction on the basis of its finding that the vital public policy of maintaining effective enforcement of the local housing code would be thwarted if landlords were permitted to evict tenants who reported housing code violations to authorities. *Id.* at 700–01. The court did not find any explicit legislative endorsement of this public policy but concluded that endorsement was implied by the act of promulgating the code. The court explained:

> [W]e have the responsibility to consider the social context in which our decisions will have operational effect. In light of the appalling condition and shortage of housing in Washington, the expense of moving, the inequality of bargaining power between tenant and landlord, and the social and economic importance of assuring at least minimum standards in housing conditions, we do not hesitate to declare that retaliatory eviction cannot be tolerated. There can be no doubt that the slum dweller, even though his home be marred by housing code violations, will pause long before he complains of them if he fears eviction as a consequence.

*Id.* at 701 (footnotes omitted).[1]

Like the court in *Edwards*, we begin our analysis by determining whether the state

---

1. The court also recognized that retaliatory eviction may interfere with a tenant's First Amendment right to complain to the housing authorities. *Edwards*, 397 F.2d at 701. However, the court did not directly rely upon this rationale, and scholars have since pointed out that it is

legislature has expressed an intent to improve housing conditions by imposing specific health and safety standards for rental housing. In Utah, renters are protected by health and safety standards from two sources. First, the legislature has authorized local boards of health to promulgate housing regulations. Utah Code Ann. §§ 26A–1–114, –121.[2] Second, the legislature has articulated certain health and safety standards for housing in the Utah Fit Premises Act (the Act). Utah Code Ann. §§ 57–22–1 to –6. The Act provides in part:

> Each owner and his agent renting or leasing a residential rental unit shall maintain that unit in a condition fit for human habitation and in accordance with local ordinances and the rules of the board of health having jurisdiction in the area in which the residential rental unit is located.

Utah Code Ann. § 57–22–3(1). Both of these legislative acts manifest an intent to improve housing conditions. If we were to permit retaliatory evictions, this intent might well be frustrated because tenants would be reluctant to report violations of health department regulations or to assert their rights under the Act. Cases from other jurisdictions correctly point out that private initiative in reporting violations of housing and health codes is vital to the enforcement of statutes similar to our Act. *See Edwards*, 397 F.2d at 700–01; *Voyager Village Ltd. v. Williams*, 3 Ohio App.3d 288, 444 N.E.2d 1337, 1346 (1982); *Dickhut*, 173 N.W.2d at 301. Fear of reprisal by landlords must be eliminated, or tenants may be deterred from exercising this initiative. As the California Supreme Court wisely observed in *Schweiger*, 476 P.2d at 100, "Whatever salutary legislative purpose induced the passage of section 1942 [of the California housing code, outlining renters' rights], it cannot be achieved if tenants exercising the rights granted by the section may be punished with judicial approbation." Further, we have already recognized that be-

cause of unequal bargaining power, low-income tenants must often accept substandard housing, *P.H. Investment v. Oliver*, 818 P.2d 1018, 1022 (Utah 1991), and we will not help perpetuate this condition by allowing retaliatory eviction by a landlord.

In addition, if retaliatory evictions were tolerated, the recourse provided in the Act for renters of substandard housing would be meaningless. Section 57–22–4 imposes specific duties on the owner:

> (1) To protect the physical health and safety of the ordinary renter, each owner shall:
>
> (a) not rent the premises unless they are safe, sanitary, and fit for human occupancy;
>
> (b) maintain common areas of the residential rental unit in a sanitary and safe condition;
>
> (c) maintain electrical systems, plumbing, heating, and hot and cold water; [and]
>
> (d) maintain other appliances and facilities as specifically contracted in the lease agreement....

Subsection 57–22–4(2) states that if the renter believes the residential unit does not comply with these health and safety standards, the renter may give written notice of noncompliance to the owner, who must commence corrective action within a reasonable time. Alternatively, the owner "may refuse to correct the condition ... and terminate the rental agreement if the unit is unfit for occupancy." Utah Code Ann. § 57–22–4(4). Finally, section 57–22–6(2) provides that if a reasonable time has elapsed after the renter has served notice on the owner to correct or remedy any condition and the owner has not complied, the renter may serve a second notice on the owner to commence corrective action within three days. If the owner fails to do so, the renter may bring an action to

fundamentally unsound because of the difficulty in proving state involvement in an eviction notice issued by a private landlord. 5 *Thompson on Real Property* 130–31 (David A. Thomas ed. 1994); Deborah H. Bell, *Providing Security of Tenure for Residential Tenants: Good Faith as a Limitation on the Landlord's Right to Terminate*, 19 Ga.L.Rev. 483, 495 (1985).

2. Under the Local Health Department Act, a local health department may be created by a county, a municipality in conjunction with a county, or several counties together. Utah Code Ann. §§ 26A–1–103 to –105.

recover damages and injunctive relief as determined by the court. Utah Code Ann. § 57–22–6(3).

It is obvious that if the owner were allowed to evict the renter upon receiving the first notice to correct or remedy a condition, the renter could not remain in possession long enough to exercise the rights afforded him or her in section 57–22–6. The scheme of the Act would be frustrated and defeated by the short circuiting of the renter's rights.

■ In reaching this conclusion prohibiting retaliatory eviction, we emphasize that we have not substantially altered the landlord's right to evict. We simply hold, as the court in *Edwards* did, that

> while the landlord may evict for any legal reason or for no reason at all, he is not … free to evict in retaliation for his tenant's report of housing code violations to the authorities. As a matter of statutory construction and for reasons of public policy, such an eviction cannot be permitted.

*Edwards,* 397 F.2d at 699 (footnotes omitted).

■ Having determined that retaliatory eviction cannot be tolerated in this state, we must define the defense and apply it to the facts of this case. The Second Restatement of Property states:

> [A] landlord has taken retaliatory action against a tenant with respect to residential property whenever [the landlord] undertakes to terminate a tenancy that is terminable by an appropriate notice, or refuses to renew a tenancy for a specified term when that term ends, if:
>
> (1) there is a protective housing statute embodying a public purpose to insure proper conditions of housing, especially multi-unit housing designated for rental to tenants of low or moderate income;
>
> (2) the landlord is in the business of renting residential property;
>
> (3) the tenant is not materially in default in the performance of his obli-

gations under the lease at the time the landlord acts;

> (4) the landlord is primarily motivated in so acting because the tenant, either alone or through his participation in a lawful organization of tenants, has complained about a violation by the landlord of a protective housing statute; and
>
> (5) the tenant's complaint was made in good faith and with reasonable cause.

Restatement (Second) of Property § 14.8 (1977). We accept this definition because it withstands some common criticisms of the retaliatory eviction defense. For example, under this definition a homeowner who rents his home during occasional absences cannot be rendered homeless by a renter who complains of housing code violations merely to retain possession of the home because the defense applies only to landlords who are in the business of renting property. *Id.* at cmt. d. In addition, a tenant of any rental property may not secure a continued tenancy by making insincere complaints because the defense is not available unless the tenant complains in good faith and with reasonable cause. *Id.* at cmt. g. Finally, the defense does not jeopardize the landlord's right to evict for any legal reason or for no reason because the tenant must prove that the landlord's primary motivation in issuing an eviction notice was retaliatory. *Id.* at cmt. f.

■ The facts of this case meet all five elements of the Restatement. The first element, which requires this court to base the defense on a protective housing statute, is met by the Act, which embodies an intent to insure safe and healthy living conditions for renters. Utah Code Ann. §§ 57–22–1 to –6. The second element, which requires the landlord to be in the business of renting residential property, is clearly met because plaintiff is the owner of a large multi-unit apartment building. The third element is met because defendants were not in breach of the rental agreement when plaintiff served them a notice of eviction.[3] The fourth element is met because the trial court found that the tenants met their burden of proving that plaintiff's

---

**3.** Defendants paid their rent each month from the time they moved in until October 1993, when plaintiff issued the notice, and the trial court did not find that they were in breach of any other terms of the agreement.

primary motivation in serving both eviction notices was to retaliate against them for complaining to the Health Department. Finally, we conclude that the fifth element is met because the tenants complained to the Health Department in good faith and with reasonable cause. They complained only after making reasonable efforts to bring the defects to plaintiff's attention, and the defects they complained of were bona fide violations of health department regulations. *See* Restatement (Second) of Property § 14.8 cmt. g (explaining that good faith element is met if tenant complains of bona fide violations and complains only after making reasonable efforts to bring defects to landlord's attention). Also, they furnished a written list of needed repairs to plaintiff as required by the Act. Utah Code Ann. § 57–22–4(2). Thus, we conclude that the facts of this case meet the Restatement's definition of retaliatory eviction and provide a defense against the unlawful detainer action.

 Next, we must examine what course is open to a landlord who has engaged in retaliatory action. Clearly, we cannot saddle the landlord with a perpetual tenant, but "[a]t a minimum, the tenant should be permitted to remain until the landlord has made the repairs required by law." *Markese,* 333 N.Y.S.2d at 75. In determining how long a tenant may remain after the landlord has made the repairs, courts have arrived at different conclusions. One popular approach has been to allow the tenant to remain until the landlord can show that his actions are not the result of retaliatory motives. *Robinson,* 463 F.2d at 865; *Schweiger,* 476 P.2d at 103; *Dickhut,* 173 N.W.2d at 302. However, this may be a difficult burden for the landlord to carry once a retaliatory motive has been found in the initial eviction action. 5 *Thompson on Real Property* 128 (David A. Thomas ed. 1994).

An alternative approach has been explored by New York courts. These courts have recognized that a tenant may be evicted anytime after repairs have been made but that courts "should be generous in allowing the tenant sufficient time, without the pressure normally exerted in a holdover eviction proceeding, to find other suitable housing." *Markese,* 333 N.Y.S.2d at 75. We agree. Once repairs have been made, a landlord may serve the tenant with an eviction notice and bring an unlawful detainer action without proffering evidence of his intent. However, because the unlawful detainer action may still be tainted with an unlawful motive, the burden is on the landlord to show that he has given the tenant a reasonable opportunity to procure other housing. Thus, the landlord is not deprived of his right to evict a complaining tenant, but the exercise of that right is deferred until he has remedied the housing or health code violation and the tenant has had a reasonable opportunity to find other housing.

Reversed.

ZIMMERMAN, C.J., STEWART, Associate C.J., and DURHAM and RUSSON, JJ., concur in HOWE's, J., opinion.