2004 UT 50
Suzanne Dowling, f.k.a. Suzanne Hoagland, Plaintiff and Respondent,
v.
Kathleen Bullen; Trolley Corners Family Therapy Clinic, a general partnership; Canyon Rim Psychotherapy; and John Does 1 through 20, Defendants and Petitioner.
No. 20021008.
Supreme Court of Utah.
FILED June 22, 2004.
This opinion is subject to revision before final publication in the Pacific Reporter.
Kathleen McConkie, Adam Crayk, Bountiful, for plaintiff.
Phillip S. Ferguson, Karra J. Porter, Salt Lake City, for defendant.
WILKINS, Associate Chief Justice:
¶1 Defendant Kathleen Bullen petitioned this court for a writ of certiorari to review the court of appeals' reversal of the district court's grant of summary judgment to Bullen on plaintiff Suzanne Dowling's alienation of affections claim. See Dowling v. Bullen, 2002 UT App 372, ¶¶ 3, 11, 58 P.3d 877. The court of appeals determined that the two-year statute of limitations set forth in the Utah Health Care Malpractice Act (the "UHCMA" or the "Act") did not apply to Dowling's cause of action, thereby rendering summary judgment inappropriate. Id.; see Utah Code Ann. §§ 78-14-1 to -4 (2002). We affirm.

FACTUAL AND PROCEDURAL HISTORY
¶2 In December 1994, due to ongoing marital difficulties and the concomitant impact upon the family unit, Suzanne Dowling and her then-husband, James Hoagland, Jr., enrolled their two daughters in therapy with Kathleen Bullen, a licensed clinical social worker. In addition to occasionally attending therapy sessions with their daughters, both Dowling and Hoagland began individual, one-on-one counseling with Bullen. However, the couple could not resolve their differences and Hoagland filed for divorce in January 1996. Shortly thereafter, in February, Bullen recommended to Dowling that she see another therapist.
¶3 On or about September 26, 1996, the date the divorce became final, Dowling learned that Hoagland and Bullen had developed a romantic attachment and were dating one another. Later, Dowling discovered that Bullen had initiated an intimate relationship with Hoagland prior to the filing of the divorce petition. Although Dowling became aware of this information on or about September 26, 1996, she did not file a complaint until September 25, 2000, nearly four years later.
¶4 In her complaint, Dowling alleged five separate causes of action, all stemming from Bullen's purported breach of trust in the context of their therapist/patient relationship. Of these five claims, Dowling's counsel conceded at the summary judgment hearing before the district court that four of themnegligent infliction of emotional distress, breach of therapist/patient relationship, breach of contract, and breach of fiduciary dutywere barred by the UHCMA's two-year statute of limitations, leaving only the alienation of affections allegation. With respect to that claim, Dowling asserted that "Bullen, by her actions in divulging [Dowling's] confidences, used her position of trust and influence as a licensed clinical social worker" to seduce Hoagland, undermine his feelings for Dowling, and inspire him to file for divorce.
¶5 For purposes of summary judgment, Bullen accepted the complaint's allegations as true and argued that Dowling's claims were barred by section 78-14-4(1) of the UHCMA, which provides that "[n]o malpractice action against a health care provider may be brought unless it is commenced within two years after the plaintiff or patient discovers . . . the injury." Utah Code Ann. § 78-14-4(1) (2002). Since Dowling's causes of action all "relat[ed] to or ar[ose] out of health care" rendered to her by Bullen, Bullen asserted that the lawsuit met the statutory definition of a "[m]alpractice action against a health care provider" and, as such, the Act applied. Id. § 78-14-3(15). Therefore, because Dowling became aware of Bullen's romantic involvement with Hoagland by September 26, 1996, she had until September 26, 1998 to timely file a complaint. According to Bullen, when Dowling failed to do so, the UHCMA's two-year statute of limitations barred her subsequent lawsuit. The district court agreed and granted Bullen's motion for summary judgment.
¶6 On appeal, the court of appeals reversed the district court, concluding that the Act's two-year statute of limitations does not automatically apply to every cause of action involving the provision of health care services by a health care professional. Dowling, 2002 UT App 372 at ¶¶ 9, 11. Reading Utah Code section 78-14-3(15), which requires that malpractice actions be based upon personal injuries "`relating to or arising out of health care,'" in conjunction with section 78-14-3(10), which defines "`[h]ealth care'" as "`any act or treatment performed or furnished . . . by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement,'" the court of appeals reasoned that the UHCMA mandates that the health care giving rise to the malpractice action be rendered to the "complaining patient." Id. at ¶¶ 8-9 (quoting Utah Code Ann. § 78-14-3(10), (15) (2002) (emphasis added)). Applied to the facts, the court of appeals determined that Dowling was not the "complaining patient" since her alienation of affections claim originated from the treatment Bullen provided to Hoagland, as opposed to the treatment Bullen provided to her. Id. at ¶ 10. Simply stated, because Dowling's alleged injuries did not arise out of health care rendered to her by Bullen, she could not properly be classified as the "complaining patient" and, thus, the Act's two-year statute of limitations did not apply. Id. Accordingly, the court of appeals reversed the district court's grant of summary judgment and remanded the case. Id. at ¶ 11. Bullen then petitioned this court for a writ of certiorari, which we granted.

STANDARD OF REVIEW
¶7 "On certiorari, we review the decision of the court of appeals, not the decision of the trial court. In doing so, this court adopts the same standard of review used by the court of appeals: questions of law are reviewed for correctness, and the trial court's factual findings are reversed only if clearly erroneous." State v. Harmon, 910 P.2d 1196, 1199 (Utah 1995) (internal citation omitted). In the context of a summary judgment motion, which presents a question of law, we employ a correctness standard and view the facts and all reasonable inferences drawn therefrom in the light most favorable to the non-moving party. Hermansen v. Tasulis, 2002 UT 52, ¶ 10, 48 P.3d 235.

ANALYSIS
¶8 The central question presented for our review is whether, properly interpreted, the Utah Health Care Malpractice Act governs Dowling's alienation of affections claim. Pursuant to general principles of statutory interpretation, "[w]e . . . look first to the . . . plain language," recognizing that "our primary goal is to give effect to the legislature's intent in light of the purpose the statute was meant to achieve." Evans v. State, 963 P.2d 177, 184 (Utah 1998) (internal citation omitted). As such, "[s]ubsections of a statute should not be construed in a vacuum but must be read as part of the statute as a whole." Utah County v. Orem City, 699 P.2d 707, 709 (Utah 1985).
¶9 Against this backdrop, Bullen urges us to determine that the court of appeals erred when it held that the Act's statute of limitations applies only when the health care giving rise to the alleged malpractice is furnished to the "complaining patient." See Dowling, 2002 UT App 372 at ¶¶ 9-10. Citing specific subsections, she asserts that the legislature intended the UHCMA to have a broad scope, as evidenced by the use of the word "any" in certain key provisions. According to Bullen, the court of appeals frustrated this intent by grounding its analysis on an unduly restrictive reading of section 78-14-3(10), which defines "[h]ealth care" as "any act or treatment performed or furnished. . . by any health care provider for, to, or on behalf of a patient during the patient's medical care, treatment or confinement."[1] Utah Code Ann. § 78-14-3(10) (emphasis added). Additionally, she argues that section 78-14-3(15), which classifies a "[m]alpractice action" as "any action against a health care provider . . . based upon alleged personal injuries relating to or arising out of health care rendered . . . by the. . . provider," encompasses virtually every potential claim involving treatment furnished by a medical professional. Id. § 78-14-3(15) (emphasis added). Simply stated, Bullen contends that the court of appeals' decision mandates that, to fall within the purview of the Act, any alleged malpractice must be committed in the physical presence of the "complaining patient," such as "while the patient is in the therapy session, the doctor's office, the surgical suite, or otherwise in direct and actual treatment with the provider." We disagree.
¶10 A straightforward examination of the plain language of sections 78-14-3(10) and 78-14-3(15) supports our conclusion. As noted above, section 78-14-3(10) defines "[h]ealth care" as "any act or treatment performed or furnished . . . for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Id. § 78-14-3(10) (emphasis added). By including the last clause, the legislature limited the types of medical services that constitute "[h]ealth care" under the UHCMA to only those services rendered by a health care provider "for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Id. (emphasis added). Placing undue weight on the comprehensive nature of the word "any" ignores the subsequent limiting language and, in light of the Act's purpose,[2] we decline to adopt such an expansive interpretation.
¶11 Likewise, Bullen's argument that the inclusion of the word "any" in section 78-14-3(15) reveals the legislature's intent that the UHCMA apply to every cause of action involving the provision of health care services by a health care provider is similarly misplaced. Although section 78-14-3(15) does classify a "[m]alpractice action" as "any action against a health care provider, whether in contract, tort, breach of warranty, wrongful death, or otherwise, based upon alleged personal injuries relating to or arising out of health care rendered [by that provider]," Bullen's proposed reading would lead to absurd results. Id. § 78-14-3(15). For example, under her reasoning, a patient whose money is unlawfully removed from her wallet by her physician while at the physician's office for a routine examination would have only two years to file a tort action for conversion, given the Act's broad application to "any action . . . relating to or arising out of health care rendered . . . by the health care provider." Id. In short, according to Bullen, the physician's act of stealing money from the patient's wallet qualifies as medical malpractice because the theft "relat[es] to or aris[es] out of" the health care context. Id. As such, the physician would be entitled to the protection of the two-year statute of limitations set forth in section 78-14-4(1). Id. § 78-14-4(1). However, the stated purpose of the UHCMA is to alleviate health care costs via the establishment of a fixed window of time "in which actions may be commenced against health care providers[,] while limiting that time to a specific period for which professional liability insurance premiums can be reasonably and accurately calculated." Id. § 78-14-2. Its purpose is not to confer the benefit of a shorter statute of limitations upon medical professionals whose alleged transgressions are only tangentially related to their provision of health care services. Therefore, we cannot conclude that Bullen's interpretation of the Act is consistent with either the plain language or the legislative intent and, in keeping with our obligation to avoid statutory constructions that "render some part of a provision nonsensical or absurd," we reject her analysis. Millett v. Clark Clinic Corp., 609 P.2d 934, 936 (Utah 1980).
¶12 Applied to the facts of this case, Bullen admitted for purposes of summary judgment that she furnished individual therapy to both Dowling and Hoagland. In her complaint, Dowling asserted that "Bullen, by her actions in divulging [Dowling's] confidences, used her position of trust and influence as a licensed clinical social worker and family counselor" to alienate Hoagland's affections and "convince [him] to enter into a sexual relationship with [her]." In response, Bullen argues that the aforementioned language of the complaint indicates that any alleged malpractice "relat[ed] to or ar[ose] out of" the therapy provided to Dowling and, thus, the Act's two-year statute of limitations applies. We disagree.
¶13 Although Dowling's complaint is not artfully crafted, it is nevertheless clear that, under these facts, Bullen could only have alienated Hoagland's affections in the course of furnishing individual therapy to him. Indeed, the crux of Dowling's claim is that Bullen, during counseling sessions with Hoagland, "used her position to convince [him] to enter into a sexual relationship with [her]" and ultimately terminate his marriage. Simply stated, despite the phrasing of the complaint, Dowling's purported injuries "relat[e] to or aris[e] out of" treatment rendered by Bullen to Hoagland, not treatment rendered by Bullen to her. Therefore, we hold that Hoagland, not Dowling, is the "complaining patient" whose cause of action, if any, is subject to the UHCMA's two-year statute of limitations. This interpretation dovetails with both the plain language and underlying purpose of the Act, and does not foreclose the possibility that alienation of affections claims may still be encompassed within the UHCMA. For example, had the alleged malpractice occurred during joint therapy sessions in which Bullen furnished counseling services to Dowling and Hoagland, the Act would almost certainly apply. However, that circumstance is not present here.
¶14 Finally, Bullen contends in the alternative that the court of appeals' decision directly conflicts with Jensen v. IHC Hospitals, Inc., 944 P.2d 327 (Utah 1997). Specifically, she asserts that Jensen, which involved a wrongful death claim, stands for the proposition that all derivative medical malpractice actions are governed by the UHCMA's two-year statute of limitations. As such, Bullen concludes that, even if Dowling does not qualify as a "complaining patient," her alienation of affections suit is still barred because it is a derivative claim stemming from the negligent provision of health care services to Hoagland. Even if Dowling's claim could be characterized as a derivative malpractice claim, Bullen misreads Jensen. Rather than establishing a uniform rule for all derivative malpractice actions, this court in Jensen held that, because "[t]he majority of states refuse[] to allow a decedent's heirs to proceed with a wrongful death suit after the decedent has settled his or her personal injury case or won or lost a judgment before dying," the "applicable statute of limitations is section 78-14-4 of the [Act][] and . . . begins to run at the time . . . the patient discovers or should have discovered the . . . injury." 944 P.2d at 332. In short, Jensen addresses the statute of limitations question solely in the wrongful death context, and we decline to adopt Bullen's suggestion that we expand its holding to include all derivative medical malpractice claims.

CONCLUSION
¶15 We affirm the decision of the court of appeals and remand the case to the district court. Based on the plain language of sections 78-14-3(10) and 78-14-3(15), we hold that, in order for the UHCMA's two-year statute of limitations to apply, the alleged malpractice must "relat[e] to or aris[e] out of" health care rendered "for, to, or on behalf of a patient during the patient's medical care, treatment, or confinement." Here, the basis for Dowling's alienation of affections action is Bullen's conduct during treatment provided by Bullen to Hoagland, not an alleged deficiency in the treatment received by Dowling. Therefore, Dowling is not a "complaining patient" and section 78-14-4(1) does not control. Affirmed and remanded for further proceedings consistent with this opinion.
¶16 Chief Justice Durham, Justice Durrant, Justice Parrish, and Justice Nehring concur in Associate Chief Justice Wilkins' opinion.
NOTES
[1] There is no dispute that Bullen, as a licensed clinical social worker, qualifies as a health care provider pursuant to section 78-14-3(12) of the Act. Utah Code Ann. § 78-14-3(12) (2002).
[2] See Utah Code Ann. § 78-14-2 (2002) (noting that the purpose of the UHCMA is to alleviate health care costs by "provid[ing] a reasonable time in which actions may be commenced against health care providers while limiting that time to a specific period for which professional liability insurance premiums can be . . . calculated," thereby reducing malpractice insurance premiums and discouraging the practice of defensive medicine by providers who "view[] a patient as a potential adversary in a lawsuit" (emphasis added)).