IN THE UTAH COURT OF APPEALS

----ooOoo----

| | | |
|---|---|---|
| Utah First Federal Credit Union, | ) | MEMORANDUM DECISION |
| | ) | |
| Plaintiff and Appellee, | ) | Case No. 20100829-CA |
| | ) | |
| v. | ) | F I L E D |
| | ) | (June 7, 2012) |
| John S. Dudley and John Does I-X, | ) | |
| | ) | 2012 UT App 164 |
| Defendant and Appellant. | ) | |

-----

Third District, Salt Lake Department, 100905635
The Honorable Deno G. Himonas

Attorneys:     Clayne I. Corey, Sandy, for Appellant
                    Darwin H. Bingham and Jonathan H. Rupp, Salt Lake City, for Appellee

-----

Before Judges McHugh, Orme, and Roth.

ROTH, Judge:

¶1     John S. Dudley appeals the trial court's determination that he did not properly exercise a right of rescission on a refinance loan made by Utah First Federal Credit Union (Utah First) and secured by his residence (the property). He therefore claims that Utah First, which purchased the property at a trustee sale, was not an owner entitled to make a claim of unlawful detainer and that, as a consequence, the court erred when it quieted title to the property in Utah First and assessed rent, damages, attorney fees, and costs against him totaling over $47,000. We affirm and remand to the trial court for an award to Utah First of attorney fees reasonably incurred on appeal.

¶2     Utah First purchased the property at a nonjudicial foreclosure sale held on March 18, 2010, after Dudley defaulted on a $1.56 million refinance loan that Utah First had extended to him. When Dudley and the other occupants failed to comply with the March 27, 2010 notice to vacate, Utah First filed a complaint for unlawful detainer (the unlawful detainer claim).

¶3     Dudley answered the complaint by asserting, as an affirmative defense of rescission, that he had rescinded the loan under the federal Truth In Lending Act (TILA). In a memorandum supporting his subsequent motion for summary judgment, Dudley more specifically explained his defense. Dudley asserted that when he refinanced the property on November 16, 2007, he did not receive the material disclosures required by TILA that trigger the running of a statutory three-day rescission period. *See generally* 15 U.S.C. § 1635(a) (2006) (current version at *id.* (Supp. 2010)) (stating that in "any consumer credit transaction" involving a security interest that "is or will be retained or acquired in any property which is used as the principal dwelling of the person to whom credit is extended, the obligor shall have the right to rescind the transaction until midnight of the third business day following [the later of] the consummation of the transaction or the delivery of the information and rescission forms . . . together with a statement containing the material disclosures required under" TILA); 12 C.F.R. § 226.23(a)(3) (2007). Dudley claimed that because he did not receive these disclosures, he was entitled to exercise his right to rescind within the extended three-year rescission period, which did not expire until November 15, 2010. *See generally* 15 U.S.C. § 1635(f) (stating that if the information, forms, and disclosures required under TILA are not delivered, "[a]n obligor's right of rescission shall expire three years after the date of consummation of the transaction"); 12 C.F.R. § 226.23(a)(3). Dudley asserted that he exercised that right by sending Utah First a notice of rescission on March 17, 2010.[1] He contended that, as a result of his rescission notice, the trust deed on the property was automatically rendered void and the subsequent trustee's sale was

---

[1]When the notice of rescission was actually given is not apparent from the record, as various documents have different dates and the date the notice was recorded is illegible. The trial court found that Dudley may have attempted to rescind the loan as early as February 2, 2010, or as late as March 18, 2010. The actual date is not material to the resolution of this appeal, and for ease of reference we will refer to the notice of rescission as occurring on March 17, 2010, because that is the date Dudley executed the notice that was recorded.

legally ineffective to transfer title to Utah First.  *See generally* 15 U.S.C. § 1635(b) ("When an obligor exercises his right to rescind under subsection (a)[,] . . . any security interest given by the obligor . . . becomes void upon such a rescission."); 12 C.F.R. § 226.23(d)(1). The district court denied Dudley's summary judgment motion and set the matter for a bench trial.

¶4      On the day trial began, Dudley filed a motion requesting that the trial court consider only the unlawful detainer claim, without considering damages under TILA, or, alternatively, exercise supplemental jurisdiction over the twenty-nine claims he had filed in federal district court three days prior.  In the supporting memorandum, Dudley explained that he was concerned that the court's limited consideration of TILA's rescission right as a defense to the unlawful detainer claim would result in a determination that would have res judicata effect on his federal claims.  The trial court denied the motion to consider the federal claims, and only the unlawful detainer claim proceeded to trial.  The question of whether Dudley had properly rescinded the loan transaction with Utah First under TILA was considered in conjunction with that claim.

¶5      Following the bench trial, the court issued a written decision in which it ruled against Dudley and in favor of Utah First.  The court concluded that "[w]hile the paperwork behind the [refinance] loan from Utah First to Dudley is not worthy of imitation, Utah First did make all necessary 'material disclosures' as that term is defined by TILA" at the time of closing on November 16, 2007.  Consequently, it determined that Dudley's right to rescind expired on November 20, 2007, the third business day after closing, and his attempt to exercise that right on March 17, 2010, was "without effect."  The trial court then entered an Order of Restitution giving Utah First possession of the property and directing Dudley and the other occupants to vacate.  *See generally* Utah Code Ann. §§ 78B-6-811(1)(b), -812(1) (2008) (requiring a judgment in favor of the plaintiff on unlawful detainer to "include an order for the restitution of the premises," which shall "direct the defendant to vacate the premises, remove his personal property, and restore possession of the premises to the plaintiff" within three calendar days).[2] The trial court also awarded Utah First $16,725.60 in unlawful detainer damages for the 110-day period between the expiration of the notice to vacate on March 27, 2010, and the

---

[2]For the convenience of the reader, all citations to the Utah Code are to the current version because any amendments to the relevant sections do not affect our analysis.

final day of trial on July 15, 2010. *See generally id.* § 78B-6-811(2)(b), (3) (requiring assessment of treble damages for damages accrued during a period of unlawful detainer). The judgment was to automatically increase by $147.96 for each day after July 15, 2010, that any of the occupants remained on the property. Utah First also received attorney fees in the amount of $29,654 and costs in the amount of $638. *See generally id.* § 78B-6-811(3) (authorizing an unlawful detainer judgment to include reasonable attorney fees); Utah R. Civ. P. 54(d) (allowing an award of costs to the prevailing party).

## I. Requirements for Exercising a Rescission

¶6    Dudley first argues that the trial court incorrectly entered an Order of Restitution giving Utah First the right to possession of the property. According to Dudley, in the absence of any response by Utah First, his notice of rescission automatically voided the trust deed for the property even if it was later determined by a court to be legally ineffective. In support of this position, Dudley asserts that Utah First was required to contest his notice of rescission by raising it in judicial proceedings or, at a minimum, by responding in writing to his notice within twenty days of receipt. Such action, he contends, "would have . . . provided [Utah First] the opportunity to produce evidence sufficient to create a triable issue of fact about compliance with TILA's disclosure requirements." Utah First did neither. Consequently, Dudley argues, Utah First acquiesced to his exercise of the right of rescission, which had the effect of voiding the trust deed pursuant to which the foreclosure sale of the property was carried out. Dudley finds support for his argument in the language of section 1635 of TILA, which provides, "When an obligor exercises his right to rescind . . . [,] any security interest given by the obligor . . . becomes void upon such a rescission." 15 U.S.C. § 1635(b).

¶7    Utah First counters by asserting that the rescission provisions of section 1635, including the one that voids a security interest, apply only to a *valid* rescission. Utah First also finds support for its position in the statutory language of section 1635. It contends, however, that the operative word is "right," that is, the security interest becomes void if the borrower exercises his *right* to rescission. *See id.* Utah First thus argues that because Dudley's right to rescind expired on November 20, 2007, three business days after the consummation of the transaction and the delivery of material disclosures, any attempt to rescind on March 17, 2010, was invalid.

¶8    We agree with Utah First that TILA contemplates a valid rescission. TILA was enacted to protect consumers from inaccurate and unfair credit practices by requiring that financial institutions provide them with accurate information regarding the actual cost of credit. *See generally id.* § 1601(a) (2006) ("The Congress finds that economic stabilization would be enhanced and the competition among the various financial institutions and other firms engaged in the extension of consumer credit would be strengthened by the informed use of credit. . . .  It is the purpose of [TILA] to assure a meaningful disclosure of credit terms so that the consumer will be able to compare more readily the various credit terms available to him and avoid the uninformed use of credit, and to protect the consumer against inaccurate and unfair credit billing and credit card practices."). TILA was not designed to provide the borrower the ability to halt a lender's foreclosure process simply by claiming a right to rescission, irrespective of the legal validity of that claim.[3]

¶9    Rather, TILA provides recourse in the form of rescission for consumers when financial institutions actually fail to comply with their statutory obligations. Thus, it is only when a borrower legitimately exercises a rescission right that TILA obligations and protections are triggered.

> Neither [TILA] nor the regulation establishes that a borrower's mere assertion of the right of rescission has the automatic effect of voiding the contract. . . .  The natural reading of this language is that the security interest becomes void when the obligor exercises a right to rescind that is available in the particular case, either because the creditor acknowledges that the right to rescission is available, or because the appropriate decision maker has so determined.

*Large v. Conseco Fin. Servicing Corp.*, 292 F.3d 49, 54-55 (1st Cir. 2002); *see also id.* at 50 (concluding that a borrower's rescission one year after closing on the basis that the bank failed to make required TILA disclosures did not automatically void the transaction without resorting to the arbitration procedure called for by the loan's terms to

---

[3]Nothing in the record indicates that Dudley moved for an injunction, filed for a declaratory judgment that he had exercised a right of rescission, or otherwise sought judicial recourse to prevent the sale of the property.

determine whether the rescission was valid); *accord In re Cromwell*, 461 B.R. 99, 131 (Bankr. E.D. Mass. 2011) ("[W]hen a debtor rescinds a transaction, meaning that the court has determined that *such a right was legally available*, the security interest becomes void." (emphasis added)). *See generally Fisher v. Chase Home Fin., LLC*, No. 3:11CV202-HEH, 2011 WL 2268474, at *3 (E.D. Va. June 7, 2011) (mem.) ("Following *valid* rescission, the borrower is not liable for any finance or other charge . . . and any security interest given by the obligor . . . becomes void." (second omission in original) (emphasis added) (internal quotation marks omitted)); *Family Fin. Servs., Inc. v. Spencer*, 677 A.2d 479, 488 (Conn. App. Ct. 1995) (stating that the security interest automatically became void upon the bank's receipt of a *valid* rescission). Unless the lender acquiesces in the notice of rescission, "it cannot be that the security interest vanishes immediately upon the giving of the notice. Otherwise a borrower could get out from under a secured loan simply by *claiming* TILA violations, whether or not the lender had actually committed any." *Yamamoto v. Bank of N.Y.*, 329 F.3d 1167, 1172 (9th Cir. 2003). "In a contested case," as here,[4] "the security interest 'becomes void' only . . . . when the right to rescind is determined [by the courts] in the borrower's favor." *Id.* Whether Dudley's rescission notice voided the trust deed, making the foreclosure sale invalid as a consequence, therefore depends on whether Dudley's purported March 17, 2010 rescission was, in fact, valid.

---

[4]Utah First did not take any action in response to Dudley's March 17, 2010 rescission notice, and Dudley argues that Utah First therefore neglected its obligation under TILA to respond within twenty days. TILA, however, only requires that the lender return payments and take action to ensure the termination of any security interest within twenty days of receiving a valid notice of rescission. *See* 15 U.S.C. § 1635(b) (2006) (current version at *id.* (Supp. 2010)). For the reasons discussed later in this decision, Dudley's request was not valid.

Dudley further contends that in failing to respond to his notice, Utah First acquiesced to his rescission. What Dudley does not acknowledge, however, is that despite his notice, Utah First simply continued with the foreclosure process and the trustee's sale of the property. Certainly, Utah First's rejection of his attempt to rescind might have been more directly communicated in writing, but its subsequent actions were unequivocal and cannot be interpreted as acquiescence.

## II. Validity of Dudley's Rescission

¶10    Dudley argues that the trial court erroneously concluded that his rescission was not valid.  His assertions that Utah First failed to provide him with material disclosures required by TILA constitute challenges to certain core factual findings about Utah First's disclosures to Dudley in connection with the loan.  In particular, the trial court found that Utah First complied with TILA by providing Dudley with information that included (1) an adjustable rate note that identified the maturity date of the loan, the current interest rate, the amount of payments for the first five years, a "clear[] and conspicuous[]" disclosure that the note had a variable interest rate after the first five years, and the minimum and maximum interest rates for the loan after the first five years; (2) a Good Faith Estimate that set forth the fees associated with the loan; (3) a notice of Dudley's right to cancel; (4) a Settlement Statement that listed the finance charges; and (5) a Truth in Lending Disclosure Statement that summarized the terms and conditions of the loan.  *See generally* 15 U.S.C. § 1602(u) (2006) (current version at *id.* § 1602(v) (Supp. 2010)) (defining "material disclosures" as "the disclosure . . . of the annual percentage rate, the method of determining the finance charge and the balance upon which a finance charge will be imposed, the amount of the finance charge, the amount to be financed, the total of payments, the number and amount of payments, the due dates or periods of payments scheduled to repay the indebtedness, and[, if applicable,] the disclosures required by section 1639(a)"); *id.* § 1635(a) (2006) (current version at *id.* (Supp. 2010)) (requiring disclosure of a borrower's right to rescind). Dudley also challenges the court's finding that he "voluntarily chose" to execute a confirmation that the three-day rescission period had expired at closing "as a convenience to him."

¶11    There is evidence in the record to support each of the court's findings.  At trial, Utah First offered into evidence documents setting out all the information that TILA requires to be disclosed, along with testimony that those documents had been delivered to Dudley in connection with the origination of the loan.  And each of those documents bears Dudley's signature, which establishes a rebuttable presumption that Dudley received them on or before closing on November 16, 2007.  *See generally id.* § 1635(c) ("[W]ritten acknowledgment of receipt of any disclosures required under [TILA] by a person to whom information, forms, and a statement is required to be given . . . create[s] a rebuttable presumption of delivery.").  At trial, Dudley made no effort to rebut the presumption of delivery; rather, he testified that he had in fact seen and signed each of

the documents. Furthermore, the escrow officer, Utah First's loan officer, and Dudley each testified about how the documents, including Dudley's right to rescind, were explained at closing. Dudley contends on appeal that those explanations were confusing and that allowing a borrower to sign a confirmation that the rescission period had expired in advance of its actual expiration was a misleading tactic because in "having [him] sign a certificate of non-rescission on the date of the transaction, Utah First suggested [he] had foreclosed his right of rescission." The trial court found, however, that Dudley was "an experienced and sophisticated businessman," not some "hapless dupe who had no idea what he was signing." Dudley's challenge to the findings therefore amounts to a challenge to the court's credibility determination. It is essentially a truism that we defer to the trial court on questions of credibility. *See Henshaw v. Henshaw*, 2012 UT App 56, ¶¶ 11-12, 271 P.3d 837 (mem.) (noting that trial courts have the opportunity to view a witness firsthand and assess his or her demeanor in the context of the proceedings and that, for this reason, appellate courts defer to their judgments absent a showing of error); *Clement v. American Honda Fin. Corp.*, 145 F. Supp. 2d 206, 209 (D. Conn. 2001) ("Ordinarily, whether disclosures under [TILA] are inaccurate, misleading, or confusing is a question of fact for the factfinder."). Dudley has not carried the very heavy burden of convincing us that the court's credibility determinations are erroneous, and we therefore accept the trial court's factual findings. *See Fisher v. Fisher*, 907 P.2d 1172, 1178 (Utah Ct. App. 1995) (declining to disturb factual findings "absent a proper showing that the trial court erred").

¶12 Dudley further contests the trial court's legal conclusions underlying the determination that Utah First's documents complied with TILA. We review a trial court's interpretation of the law for correctness. *See generally In re Kitts*, 442 B.R. 818, 824-25 (Bankr. D. Utah 2010) (reviewing the bankruptcy court's interpretation of TILA for correctness). In particular, Dudley contends that the trial court's conclusions were flawed as a result of it wrongly interpreting the definition of a finance charge under TILA to exempt the appraisal and pest inspection fees he was charged at closing from the disclosure requirements. TILA defines a finance charge as "the cost of consumer credit as a dollar amount" and includes within its definition "any charge payable directly or indirectly by the consumer and imposed directly or indirectly by the creditor as an incident to or a condition of the extension of credit." 12 C.F.R. § 226.4 (2007); *accord* 15 U.S.C. § 1605(a). In transactions involving an extension of credit secured by real property, however, property appraisal fees and pest-infestation inspection fees are exempt from the finance charge definition "if the fees are bona fide and reasonable in

amount." 12 C.F.R. § 226.4(c)(7)(iv). Dudley contends that Utah First failed to prove that the appraisal fee and pest inspection fee he incurred were reasonable in amount or actually paid, and for this reason, the trial court erred in exempting them from the finance charge disclosure requirement.

¶13    Dudley has failed, however, to point to any place in the record where the issue of the reasonableness and bona fides of the appraisal fee and pest inspection fee was preserved in the trial court. *See generally* Utah R. App. P. 24(a)(5)(A), (a)(9) (requiring an appellant to include contentions and reasoning regarding the issues presented as well as citations to the portion of the record where the issue was raised in the trial court). As a result, Dudley has failed to comply with our briefing requirements meant to ensure that issues raised on appeal have first been brought to the attention of the trial court in a manner that informed the court of the need to make a ruling. *See generally 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801. Preservation is a prerequisite to our consideration of an issue on appeal, *see id.* ("Issues that are not raised at trial are usually deemed waived."), and we may decline to address an issue that does not comply with the briefing requirement that preservation be demonstrated, *see State v. Smith*, 2010 UT App 231, ¶ 3, 238 P.3d 1103 ("Briefs that do not comply with the detailed requirements set forth in rule 24(a) [of the Utah Rules of Appellate Procedure] may be disregarded or stricken.").

¶14    Even if Dudley did adequately raise the issue below, he nevertheless failed to alert the trial court to the need to enter findings that the appraisal fee and pest inspection fee were reasonable and bona fide to warrant exempting them from the finance charge. The failure to bring this kind of alleged omission to the trial court's attention results in waiver of the issue on appeal. *See In re K.F.*, 2009 UT 4, ¶¶ 61, 63, 201 P.3d 985 ("[I]t is . . . wholly necessary for a party to challenge and thus afford the trial court an opportunity to correct the alleged error of inadequately detailed findings" because it is the type of error that is "easy for a trial judge to correct" while the case is "fresh in the judge's mind." (internal quotation marks omitted)); *id.* ¶ 63 (declining to consider an inadequacy of the findings challenge on appeal "unless the petitioner first provided the trial court the opportunity to correct the error").

¶15    Furthermore, with regard to the appraisal fee, Dudley mischaracterizes the trial court's decision. The trial court did not exempt the appraisal fee from the finance charge, as Dudley claims. Rather, it concluded that "[t]he disclosures, provided to

Dudley prior to and at closing of the loan complied with the requirements of [TILA]," including the Settlement Statement, which the court determined accurately reflected the finance charges: "Dudley elected to receive an itemization of the amount financed and was thus provided with the Settlement Statement that accurately reflected the finance charges." The Settlement Statement indeed discloses an "Appraisal Fee to UTAH FIRST FEDERAL CREDIT UNION" in the amount of $1000.[5] While the court did not make any express findings regarding whether this fee was a finance charge, the quoted language from its decision is broad enough to bring the appraisal fee within the court's conclusion. And, in any event, the end result is the same as if the court had accepted Dudley's position. Appraisal fees are exempt from TILA's definition of finance charges, with the proviso that the exemption does not apply if the fees are unreasonable or not bona fide. Dudley claims Utah First did not prove that the appraisal fee was reasonable and bona fide. The result of Dudley's analytical path, however, is that the appraisal fee *is* a finance charge, meaning it had to be disclosed. The trial court found that the fee was disclosed, so its conclusion that Utah First complied with TILA's disclosure requirement in this regard seems unassailable--at least on the basis argued by Dudley on appeal.[6]

---

[5]The record evidence indicates that the $1000 appraisal fee covers the costs of two appraisals. The first appraisal valued the property at $1.33 million. Because Dudley was seeking a loan for $1.56 million and offered only the property as collateral, Utah First ordered a second appraisal. The second appraisal valued the property at $1.95 million and was the basis for Utah First's decision to make the loan. Dudley takes issue with the decision to order a second appraisal, asserting that it was obtained "without . . . Dudley's knowledge or approval" and that it inflated the value of the home, but he does not explain how the advisability of the second appraisal or the dollar amount at which it valued the property renders the disclosure of the $1000 fee inadequate; nor has he identified a basis, other than nondisclosure, on which TILA applies to this circumstance.

[6]Dudley also claims that Utah First failed to provide new disclosures as required by TILA section 1639 after it modified the terms of the loan. The trial court's written order, however, does not contain any findings or conclusions about the application of that section, and Dudley has failed to point to the place in the trial record where he raised the issue or the court made an oral ruling on it. Consequently, Dudley has not

(continued...)

¶16     In summary, Dudley's claims of error regarding the trial court's determination that Utah First provided Dudley with all of the material disclosures by the time of closing on November 16, 2007, are without merit.[7] The trial court therefore did not err

---

[6](...continued)
demonstrated that the issue was preserved. *See generally* Utah R. App. P. 24(a)(5)(A) (requiring an appellant to show that an issue has been preserved by including citations to the portion of the record where it was presented to the trial court).

The parties nevertheless each address the issue as though it were presented to the trial court, and it does appear to have been addressed by both parties in closing arguments. But, even if preserved, the claim fails because section 1639 is not applicable under the facts of this case. That section governs high cost loans, that is, loans with high annual percentage rates (APR) at consummation or with closing costs that exceed the greater of either 8% of the total loan or $400. *See* 15 U.S.C. § 1639(a) (2006) (limiting the section's application to high cost loans as defined by section 1602(aa)). Dudley's initial interest rate was 6.625%, well below the APR threshold required to trigger section 1639. *See* 15 U.S.C. § 1602(aa) (current version at *id.* § 1602(bb) (Supp. 2010)) (setting the APR for section 1639 at 10% above the yield on treasury securities with a comparable maturity). In addition, 8% of Dudley's $1.56 million loan is $124,800. Thus, section 1639 would apply only if Dudley's closing costs exceeded $124,800. *See id.* (defining a high cost loan, to which section 1639 applies, as one with closing costs in excess of *the greater of either* $400 or 8% of the loan). Dudley's closing costs totaled $20,064.11, well below the amount needed to trigger section 1639's disclosure requirements.

[7]Dudley raises three additional claims regarding disclosures that we do not consider. First, he asserts in his statement of facts that the Settlement Statement disclosed credit report fees in the amount of $150 when the reports cost only $94.30. Dudley does not address this issue in his argument section; consequently, it is inadequately briefed. *See generally* Utah R. App. P. 24(a)(9) (stating that to challenge an issue on appeal, a party must make an argument containing "the contentions and reasons" along with "citations to the authorities"); *Valcarce v. Fitzgerald*, 961 P.2d 305, 313 (Utah 1998) ("It is well established that an appellate court will decline to consider an argument that a party has failed to adequately brief."). Second, Dudley contends that his wife was entitled to certain disclosures prior to foreclosure. He did not raise this claim below--indeed, his wife is not even a party to this action--and the issue is

(continued...)

in concluding that Dudley's right to rescind the loan transaction with Utah First expired on November 20, 2007, long before his March 17, 2010 rescission notice. Because no legally effective rescission of the loan transaction ever occurred, the nonjudicial foreclosure sale of the property secured by the deed of trust was valid, and the trial court's conclusion to that effect was proper.

### III. Application of Unlawful Detainer Statute

¶17    Dudley's final argument on appeal is that the trial court failed to correctly apply the unlawful detainer statute, thereby depriving him of due process and equal protection. *See generally Red Cliffs Corner, LLC v. J.J. Hunan, Inc.*, 2009 UT App 240, ¶ 13, 219 P.3d 619 (stating that the trial court's interpretation and application of the unlawful detainer statute is a question of law, reviewed for correctness). Dudley's complaint on appeal is difficult to discern. On the one hand, he seems to take issue with the court's determination that this was "not an appropriate case for the expedited hearing process," in light of its denial of his request to exercise supplemental jurisdiction over his federal rescission claims at least in part on the basis that it was untimely. On the other hand, he appears to be contending that because the court denied the motion to exercise supplemental jurisdiction, it could only consider issues relating to the right of possession, which Dudley claims does not include his claim of rescission. More simply put, Dudley's argument seems to be that the trial court should either have addressed all his claims, both state and federal, or not considered his rescission claim at all in the context of the unlawful detainer action. We conclude that the trial court properly ruled

---

[7](...continued)
therefore not preserved for appeal. *See generally 438 Main St. v. Easy Heat, Inc.*, 2004 UT 72, ¶ 51, 99 P.3d 801 ("[I]n order to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." (alterations in original) (internal quotation marks omitted)); *id.* ("Issues that are not raised at trial are usually deemed waived."). Finally, Dudley asserts that Utah First failed to comply with TILA section 1638(a)(2)(B)(iii) when it failed to accurately allocate charges to be disbursed to third parties and those to be retained by the bank itself. Dudley has not specifically identified which charges were not accurately allocated, however, and we therefore do not consider the claim further. *See generally* Utah R. App. P. 24(a)(5) (requiring an appellant to specifically identify the issues presented for review).

on the rescission claim in the course of adjudicating Utah First's unlawful detainer claim.

¶18    Because Dudley raised, as an affirmative defense to Utah First's unlawful detainer action, the claim that he had rescinded the loan transaction and that the trust deed under which the foreclosure sale had taken place was therefore invalid, the issue of whether his rescission was legally effective had to be resolved before the trial court could determine whether Dudley was in unlawful detainer of the property. Whether or not Dudley had exercised a valid right of rescission was central to the trial court's resolution of the issue of who had the legal right to possession of the property. *Cf. Bichler v. DEI Sys., Inc.*, 2009 UT 63, ¶¶ 32-33, 220 P.3d 1203 (observing that counterclaims for a breach of the warranty of habitability or wrongful eviction must be resolved in an unlawful detainer action because both pertain to the question of possession).[8] For the reasons discussed above, the trial court correctly determined that Dudley's purported rescission was not valid and appropriately entered an order of

---

[8]Dudley relies on *Bichler v. DEI Systems, Inc.*, 2009 UT 63, 220 P.3d 1203, to support his argument that the rescission is outside the scope of an unlawful detainer claim. *Bichler* does not support Dudley's position. To the contrary, while *Bichler* limits the kind of counterclaim that needs to be addressed in an unlawful detainer case, it does so on the basis that the "primary purpose of the unlawful detainer statute is to provide a speedy resolution on the issue of possession." *Id.* ¶ 29. *Bichler*, in fact, emphasizes that counterclaims related to the question of possession *must* be resolved in an unlawful detainer case. *See id.* ¶¶ 29-33. As we have explained above, because Dudley defended on the basis that he had rescinded the loan transaction, the trial court was required to decide whether his rescission was legally valid in order to determine if Utah First had a right to possession of the foreclosed property under the trustee's deed. Thus, even though the rescission issue in this case was raised as an affirmative defense rather than a counterclaim, the *Bichler* principle is the same: In an unlawful detainer action, "a court must resolve all claims relating to possession." *Id.* ¶ 32. The trial court therefore properly applied the principles of *Bichler* when it decided the validity of Dudley's rescission notice.

restitution, giving Utah First full possession of the property and unlawful detainer damages for Dudley's continued occupancy of the property.[9]

¶19    Finally, Dudley's claim that the trial court erred in refusing to exercise supplemental jurisdiction over his twenty-nine federal claims is without merit.  The statutory authority upon which Dudley relies--title 28, section 1367(a) of the United States Code--grants authority only to federal courts to exercise supplemental jurisdiction over state claims arising out of the same case or controversy and does not mention state courts at all.  *See* 28 U.S.C. § 1367(a) (2006).  Dudley has not cited any federal or Utah law that authorizes a state court judge to unilaterally assume jurisdiction over claims in a case pending in federal court, whether or not those claims were brought under state law.  Moreover, even if the trial court had such authority, it was well within its discretion to deny Dudley's motion as untimely, when the motion was made on the first day of trial.

¶20    In conclusion, Dudley was required to exercise a valid right of rescission before Utah First had any obligation to halt the nonjudicial foreclosure proceedings.  Because Utah First provided Dudley with the disclosures required by TILA by the time of closing on November 16, 2007, Dudley's right to rescind expired on November 20, 2007.  Dudley did not attempt to rescind until March 17, 2010, more than two years later.  His attempt to rescind was therefore ineffective, and the trial court correctly ruled that Utah First acquired possession of the property through the trustee's deed at the end of a valid nonjudicial foreclosure process.  The trial court therefore properly ruled that Dudley was in unlawful detainer and awarded Utah First damages, attorney fees, and costs.

---

[9]Dudley's claim that Utah First's suit is barred by Utah Code section 78B-6-809 was not raised in the trial court, and therefore it is unpreserved for appeal.  *See generally 438 Main St.*, 2004 UT 72, ¶ 51 ("[I]n order to preserve an issue for appeal[,] the issue must be presented to the trial court in such a way that the trial court has an opportunity to rule on that issue." (alterations in original) (internal quotation marks omitted)).  Consequently, we do not reach that issue.  *See id.* ("Issues that are not raised at trial are usually deemed waived.").  We note, however, that section 78B-6-809 does not appear to be applicable in any event because it applies to actions for forcible entry or forcible detainer, not unlawful detainer.  *See* Utah Code Ann. § 78B-6-809 (2008); *see also id.* § 78B-6-801 (Supp. 2011) (defining forcible detainer and forcible entry separately from unlawful detainer).

¶21    Utah First requests attorney fees on appeal. Because it was awarded attorney fees in the trial court pursuant to the unlawful detainer statute and has prevailed here, it is entitled to recover its reasonable fees incurred on appeal. *See generally Valcarce v. Fitzgerald*, 961 P.2d 305, 319 (Utah 1998) ("[Appellate] court[s] ha[ve] interpreted attorney fee statutes broadly so as to award attorney fees on appeal where a statute initially authorizes them. . . . [W]hen a party who received attorney fees below prevails on appeal, the party is entitled to fees reasonably incurred on appeal." (internal quotation marks omitted)). We remand to the trial court for entry of an appropriate award of attorney fees.

_____
Stephen L. Roth, Judge

-----

¶22    WE CONCUR:

_____
Carolyn B. McHugh,
Presiding Judge

_____
Gregory K. Orme, Judge