**2016 UT App 216**

## THE UTAH COURT OF APPEALS

DEUTSCHE BANK NATIONAL TRUST COMPANY,
Appellee,
*v.*
WILLIAM M. YORK,
Appellant.

Memorandum Decision
No. 20141083-CA
Filed October 27, 2016

Fourth District Court, Fillmore Department
The Honorable M. James Brady
No. 120700011

Marshall M. Thompson, Attorney for Appellant

Brad G. DeHaan and Nadia D. Adams, Attorneys
for Appellee

JUDGE JILL M. POHLMAN authored this Memorandum Decision, in
which JUDGES STEPHEN L. ROTH and KATE A. TOOMEY concurred.

POHLMAN, Judge:

¶1     Defendant William M. York appeals the trial court's
judgment for unlawful detainer in favor of Deutsche Bank
National Trust Company, as Trustee for Ameriquest Mortgage
Securities Inc., Asset-Backed Pass-Through Certificates, Series
2004-R8 (Deutsche Bank). York asserts that, during the
proceedings below, he should have been allowed to raise
affirmative defenses challenging Deutsche Bank's title to the
subject property and establishing irregularities in the foreclosure
process. York also asserts that the trial court erred by failing to
meaningfully consider his request for sanctions under rule 26 of
the Utah Rules of Civil Procedure. We affirm.

¶2 In 2004 York obtained a loan from Ameriquest Mortgage Company, and he executed a deed of trust on certain real property (the Trust Deed) as security for that loan. Thereafter, York was late in making his payments and deemed to be in default. As a result, the subject property was sold at a trustee's sale, at which Deutsche Bank was the successful bidder. When York failed to vacate the property after being served with a notice to quit, Deutsche Bank sued York for unlawful detainer in the action giving rise to this appeal.

¶3 York responded by suing Ameriquest, Deutsche Bank, and several other entities in federal court, alleging "predatory lending practices," "criminal acts," and violations of "his constitutional rights to his property and due process," based on "schemes and patterns of fraud related" to his mortgage and the foreclosure process. The federal court dismissed York's claims against Deutsche Bank with prejudice, concluding that York failed to allege any viable claims against Deutsche Bank and that allowing York an opportunity to amend his complaint would be futile.

¶4 In the meantime, acting pro se, York responded in the state court unlawful detainer action. York filed a "Counter Claim"—"Civil Complaint" raising the same allegations and claims he had filed in federal court. York also filed an answer, which twice referenced his counterclaims, stating that specific allegations were "denie[d] . . . (see Defendant's counter claim in this action)." In addition, York pleaded a single affirmative defense, asserting that "Plaintiff fails to allege a cause of action for which relief may be granted."

¶5 The trial court dismissed York's counterclaims against Deutsche Bank without reaching the merits, concluding that York's claims were "identical" to the claims brought in federal court; failed to meet the minimum pleading standards of Utah Rule of Civil Procedure 8(a); sought civil damages based upon

criminal statutes that do not provide a private right of action; and, as they relate to fraud, failed to meet the heightened pleading requirements of Utah Rule of Civil Procedure 9(b). The trial court later dismissed York's counterclaims as to the remaining defendants. York submitted an amended counterclaim, but it was stricken because, among other things, York did not obtain leave of court and the pleading contained no new factual allegations or causes of action not addressed by the federal court.

¶6 Despite the generally expedited nature of unlawful detainer actions, eight months passed between the time Deutsche Bank filed suit and the date set for an evidentiary hearing on the complaint. Deutsche Bank attributed the delay to the federal court proceedings, having elected not to "move forward with [the state] proceeding because if there would have been any merit[] found to Mr. York's complaint in [federal] district court, [Deutsche Bank] would have had to go back and redo the foreclosure process."

¶7 But, on the date set for hearing in November 2012, the trial court first addressed York's motion to postpone the hearing. York asserted that he needed more time to complete discovery and that Deutsche Bank had neither served initial disclosures within the fourteen-day period prescribed in rule 26 of the Utah Rules of Civil Procedure nor timely provided him with the documents it intended to use at the hearing. After questioning both parties, the trial court noted that "despite [Deutsche Bank's] best efforts" to timely provide all documents seven days before the hearing, York may not have had "an opportunity to review those and be prepared for today." Deutsche Bank then offered to move forward solely with the documents attached to its complaint. But York sought to go "beyond" those documents, contending that "[b]ecause of the lengthy counter-complaint and all the issues of fraud and deceit and some criminal action, [he]

need[ed] to have more time to discover what these people ha[d] done."

¶8    The trial court ruled that the documents attached to Deutsche Bank's complaint constituted its initial disclosures; York had had ample time to conduct discovery but "[n]o efforts ha[d] been made"; and while due process applied, the rules of civil procedure on which York relied "do not necessarily" govern eviction actions, which are "typically expedited." The court then presented Deutsche Bank with a choice: proceed with the hearing based solely on the documents attached to the complaint or postpone the hearing three weeks. Deutsche Bank elected to postpone the hearing. When asked if there was any reason he could not have the hearing on the subsequent date, York responded, "I don't think I have a problem with that, your Honor." The trial court then postponed the hearing until mid-December with instructions that each side provide all documents to the other within five days.

¶9    The day before the rescheduled hearing, York filed several motions including a "Motion to Vacate Order Striking [York's] Amended Counter-Claim," a "Motion to Vacate Order of Dismissal of [York's] Counter Claim-Civil Complaint Against the Remainder of the Counterclaim Complaint Parties," and a "Rule 26, 37, 41 Motion." The last motion asserted, among other things, that Deutsche Bank's "claim of ownership" was false.

¶10    Before proceeding with the rescheduled hearing, the trial court first noted that it would need to address York's motions, but only after Deutsche Bank had an opportunity to respond. The court ruled that the motions were "untimely in terms of being presented for a ruling today" and would be considered later, and that the court would move forward with that day's evidentiary hearing on the complaint.

¶11    York then brought up a concern he had raised in the prior hearing and reiterated in his "Rule 26, 37, 41 Motion"—that

Deutsche Bank had not timely provided initial disclosures as rule 26 of the Utah Rules of Civil Procedure requires. York did not dispute that he had received those disclosures after the last hearing, but nevertheless claimed that Deutsche Bank should not be allowed to use any information not supplied within the fourteen-day time limit.

¶12    In response, the trial court initially misspoke, commenting that it had not addressed the issue previously. After being reminded of its prior ruling, however, the court reiterated that the rules of civil procedure on which York relied did not necessarily apply in expedited proceedings for unlawful detainer. In addition, the trial court noted that York had not timely brought the issue to the court's attention, because he had not filed a motion to compel or for sanctions during the nine months the case had been pending. The trial court also observed that, prior to the hearing, York had at least two weeks "to receive information adequate to prepare himself for most eviction actions."

¶13    In determining whether the case should proceed "without certain evidence" or whether York should be given more time to prepare, the court questioned York as to any efforts he had made after receiving Deutsche Bank's documents. The court concluded that York had spent the prior weeks focusing on the issue of property ownership and whether Deutsche Bank had valid title thereto. York had not, however, undertaken efforts related to the "narrow" issues of that day's hearing. The trial court then ruled that the hearing would proceed without the exclusion of Deutsche Bank's witnesses or documents.

¶14    Throughout its discussion, the trial court consistently reminded York that the underlying validity of Deutsche Bank's title and any improprieties or irregularities in the foreclosure process were "immaterial" to the matters at issue on that day. While those issues had been alleged in York's counterclaims, the

counterclaims had been dismissed; and if York sought to raise those issues in "some other way," he had "those rights," but those issues were outside the scope of the December hearing.

¶15   During the hearing, the trial court allowed York some leeway to cross-examine Deutsche Bank's witnesses about, for example, the documents presented as well as the purpose and effect of the trustee's sale. But the trial court sometimes limited York's questioning, reminding him that the court was not addressing the validity of Deutsche Bank's title. At no time, however, did York specify what evidence he would have presented or which questions he would have asked had he not been constrained during his cross-examinations of Deutsche Bank's witnesses.

¶16   After Deutsche Bank presented its case, the trial court asked if York had any motions or wished to call witnesses. York responded that he had "[o]nly the general objection that . . . none of these documents should have been allowed." York then asked to admit two documents "identifying what the banks did wrong" and "the problem with fraudulent mortgage documents," and those documents were admitted. York did not attempt to introduce any other evidence at the hearing.

¶17   The trial court indicated that it would consider York's motions before ruling on the evidence that had been presented. The trial court later denied York's motions and issued findings of fact and conclusions of law, determining that York had unlawfully detained the property. The trial court issued its final judgment in October 2014, awarding damages to Deutsche Bank and requiring York to vacate the property. York then filed a "Motion to Vacate the Court[']s Findings and Orders and to Grant Summary Judgment," again asserting flaws in Deutsche Bank's title to the subject property and the underlying foreclosure process. York's motion was denied.

¶18 On appeal, York asserts that the trial court improperly precluded him from raising affirmative defenses challenging Deutsche Bank's title to the property and establishing irregularities in the foreclosure process. York also asserts that the trial court erred by failing to meaningfully consider his request for sanctions under rule 26 of the Utah Rules of Civil Procedure.[1] York does not challenge the dismissal of his counterclaims or the denials of his motions.

¶19 Turning to whether York was improperly barred from asserting affirmative defenses, York raises two concerns: (1) that the trial court prohibited him from fully cross-examining Deutsche Bank's witnesses with regard to property ownership, validity of title, and the foreclosure process, and (2) that he was prohibited from introducing evidence on those same issues. Generally, a trial court's decision to exclude evidence is reviewed for abuse of discretion, but a decision to exclude evidence based solely on a legal conclusion is reviewed for correctness. *Utah Dep't of Transp. v. Walker Dev. P'ship*, 2014 UT App 30, ¶ 11, 320 P.3d 50; *see also Lawrence v. MountainStar Healthcare*, 2014 UT App 40, ¶ 17, 320 P.3d 1037 ("[T]he proper

_____

1. York also suggests that barring a defendant from challenging property ownership in the context of an unlawful detainer claim violates article XXII, section 1, of the Utah Constitution. To the extent York asserts a constitutional violation, we do not address it. This argument was raised for the first time on appeal, and York does not allege plain error or exceptional circumstances. *See Jacob v. Bezzant*, 2009 UT 37, ¶ 35, 212 P.3d 535 (declining to address an alleged violation of "the Utah Constitution because the argument was raised for the first time on appeal and there are no exceptional circumstances that allow us to review it"). We note, however, that this claim rests on a defective premise—i.e., that York was prohibited from challenging ownership in the unlawful detainer action. *Infra* ¶¶ 21–25.

scope of cross-examination is within the sound discretion of the trial court and should not be disturbed absent a showing of abuse." (citation and internal quotation marks omitted)); *cf. State v. Ashby*, 2015 UT App 169, ¶ 17, 357 P.3d 554 ("When reviewing a trial court's decision to limit cross-examination, we review the legal rule applied for correctness and the application of the rule to the facts of the case for an abuse of discretion." (citation and internal quotation marks omitted)).

¶20     An appellant challenging the exclusion of evidence "bears the burden of showing the harmfulness of the error." *Gallegos ex rel. Rynes v. Dick Simon Trucking, Inc.*, 2004 UT App 322, ¶ 21, 110 P.3d 710; *accord Lawrence*, 2014 UT App 40, ¶ 34. Here, the "insuperable obstacle to [appellant's] contention is that [he] did not make any offer of proof as to what evidence would be adduced, nor the purpose it would serve." *See Bradford v. Alvey & Sons*, 621 P.2d 1240, 1243 (Utah 1980). "A party may claim error in a ruling to . . . exclude evidence only if . . . [the] party informs the court of its substance by an offer of proof, unless the substance was apparent from the context." Utah R. Evid. 103(a)(2). By making that offer of proof, a party creates the record necessary for review, enabling an appellate court to determine if error occurred and if the error was harmful.

¶21     York did not create such a record. Prior to the evidentiary hearing, York made vague statements that "if a foreclosure was not legally done, that would [a]ffect an eviction proceeding," and that he was "trying to find out who is the real party in interest, who is the owner of this thing." But York did not describe with any more detail the evidence he intended to introduce at the hearing. On appeal, York is equally vague. York argues that "a defendant in an unlawful detainer action [may] assert the affirmative defense that the purported owner does not actually own the property in question," but York does not indicate what evidence he was prepared to present in that regard or when he specifically was barred from presenting it. Indeed,

York asked to admit only two exhibits during the hearing, both of which were accepted into evidence.

¶22    Nor does York identify any questions he sought to ask but was precluded from raising during cross-examination, much less point to follow-up objections and offers of proof bearing on his alleged affirmative defenses. "[T]o preserve this issue on appeal, appellant had to make an offer of proof on the record as to what evidence he intended to adduce by his questions or to propound further questions more explicitly pertinent to the issue." *Hill v. Hartog*, 658 P.2d 1206, 1209 (Utah 1983) (citations omitted). Thus even assuming that the trial court erred in excluding evidence regarding property ownership, validity of title, and the foreclosure process, we have no basis for concluding that those exclusions were harmful. *See Lawrence*, 2014 UT App 40, ¶¶ 34–35 (concluding that appellant had failed to show prejudice from the trial court's erroneous exclusion of evidence).[2] The record does not indicate what evidence—if any—York otherwise might have presented in support of those claims.[3]

---

2. We likewise reject York's argument that prejudice should be presumed because "there is no record to show how strong or weak the evidence may have been." As noted above, York could have created the requisite record, and bore the burden of doing so, but did not and thus failed to preserve the issue for appeal.

3. York, who is represented by counsel on appeal, has not sought an exception to this rule on the basis that he was acting pro se during the proceedings below. Even had he made this request, however, it would not alter the outcome. "As a general rule, a party who represents himself will be held to the same standard of knowledge and practice as any qualified member of the bar," but "because of his lack of technical knowledge of law and procedure [a layman acting as his own attorney] should be accorded every consideration that may reasonably be indulged."

(continued…)

¶23   In addition, York erroneously assumes that because the trial court limited the scope of the evidentiary hearing, York was barred from addressing property ownership, validity of title, and the foreclosure process at any time during the proceedings below. In an unlawful detainer action, a court "'must resolve all claims relating to possession'" whether those claims are raised as affirmative defenses or as counterclaims. *Utah First Fed. Credit Union v. Dudley*, 2012 UT App 164, ¶ 18 n.8, 280 P.3d 462 (quoting *Bichler v. DEI Sys., Inc.*, 2009 UT 63, ¶ 32, 220 P.3d 1203). Accordingly, "in an unlawful detainer action with multiple claims or counterclaims, a rule 54(b) entry of final judgment resolving the issue of possession is proper when it includes all claims and counterclaims that are necessary to determine lawful possession of the property." *Bichler*, 2009 UT 63, ¶ 30. Assuming without deciding that York's claims related to "possession" and thus required resolution prior to final judgment under rule 54(b) or otherwise, that is precisely what occurred in this case.

¶24   York raised issues of property ownership, validity of title, and the foreclosure process in his counterclaims and pre-hearing

---

(…continued)
*Nelson v. Jacobsen*, 669 P.2d 1207, 1213 (Utah 1983) (alteration in original) (citation and internal quotation marks omitted). Here, every such consideration has been afforded. During the evidentiary hearing, for example, York was allowed to admit the two exhibits even though he offered them for the first time during his closing argument. Now on appeal, and represented by counsel, York still does not identify any evidence he was prepared to present but precluded from offering at the hearing, nor does he identify any questions he sought to ask during cross-examination or the evidence he sought to elicit via that questioning. Thus, no amount of reasonable indulgence would support a conclusion of prejudicial error with regard to York's evidentiary challenges.

motion, which were dismissed or denied before final judgment was entered. And when York filed a post-judgment motion again asserting Deutsche Bank had failed to prove, among other things, the validity of its title to the subject property, his motion was considered and dismissed.

¶25 York does not challenge any of these instances in which ownership, validity of title, or the foreclosure process were raised and dismissed during the proceedings below. We therefore cannot fault the trial court for refusing to take evidence at the hearing on issues other than Deutsche Bank's prima facie case of unlawful detainer.[4] *Cf. Maxfield v. Herbert*, 2012 UT 44, ¶ 21 & n.6, 284 P.3d 647 (recognizing courts' broad discretion to order and structure election hearings based on general principles of civil procedure, and concluding that a court "[s]urely" would "not [be] required to accept and consider evidence" on a matter shown to be irrelevant due to the prior resolution of a defensive motion). Accordingly, we reject York's claim that he was erroneously barred from raising affirmative defenses to the unlawful detainer claim.[5]

---

4. As the trial court indicated, York remained free to raise his issues at the appropriate time, in an appropriate way: "If you want to raise that question [of ownership], you've filed your motion. I'll rule on that at another time. If you want to raise it some other way, you have those rights, but today I'm only dealing with who has the right to possess the property . . . ."

5. Given our disposition of this issue, we need not decide whether York could have raised his affirmative defenses, despite not pleading them in his answer other than by reference to his counterclaims, which were dismissed. *See Utah Dep't of Transp. v. Walker Dev. P'ship*, 2014 UT App 30, ¶ 21, 320 P.3d 50 ("The assertion of unpleaded claims in briefing and argument before the district court and on appeal cannot remedy the failure to

(continued…)

¶26   Finally, York asserts that the trial court failed to meaningfully consider his request for sanctions under rule 26 of the Utah Rules of Civil Procedure. "We review a trial court's denial of discovery sanctions under an abuse of discretion standard," *Hull v. Wilcock*, 2012 UT App 223, ¶ 36, 285 P.3d 815 (citation and internal quotation marks omitted), but no abuse of discretion has been shown here. According to York, he asserted that Deutsche Bank failed to timely provide initial disclosures and other documents, but the trial court labeled his objection untimely and did not otherwise address it. The record, however, is to the contrary.

¶27   At the November 2012 hearing, York first raised his concerns about a lack of initial disclosures and untimely receipt of documents. After questioning both parties, the trial court concluded that the documents attached to Deutsche Bank's complaint constituted its initial disclosures; the procedural timelines on which York relied did not necessarily apply in eviction actions, which typically are expedited; despite Deutsche Bank's efforts to timely provide all documents seven days before the hearing, York may not have had adequate opportunity to review them; and York had ample time to conduct discovery but made no such efforts.

¶28   While Deutsche Bank offered to move forward solely with the documents attached to its complaint, York requested more documents and more time. When the trial court allowed Deutsche Bank either to proceed based solely on its initial disclosures or to postpone the hearing, Deutsche Bank elected

---

(…continued)
include them in an appropriate pleading." (ellipsis, citation, and internal quotation marks omitted)). We also do not decide what effect, if any, York's asserted defenses would have had on the unlawful detainer action, had they been successfully established.

the latter, consistent with York's preference. When asked if there was any reason York could not have the hearing on the subsequent date, York did not object.

¶29 During the December hearing, when York again asserted that Deutsche Bank had not timely provided initial disclosures, the trial court again addressed York's objection noting, among other things, that York had not previously filed a motion to compel or for sanctions; the procedural timelines on which York relied did not necessarily apply; and York had had at least two weeks to prepare since the last hearing. The court also concluded that, since receiving Deutsche Bank's documents, York had not undertaken discovery efforts related to the issues to be addressed during that day's hearing. The trial court then ruled that the hearing would proceed without the exclusion of Deutsche Bank's witnesses or documents.

¶30 Thus, York's assertion that the trial court failed to address his request for discovery sanctions as anything other than untimely is plainly incorrect. Because York does not address the trial court's substantive disposition of the discovery issues, much less show that the court's approach exceeded its discretion, we reject his claim of error.

¶31 Accordingly, we affirm.[6]

———————

---

6. Because the judgment is affirmed, we deny York's request for costs incurred on appeal. *See* Utah R. App. P. 34(a).